ST. LOUIS & S. F. RY. CO. et al. v. MILES.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1897.)

1. RAILROADS—NEGLIGENCE—INJURIES TO PERSONS ON TRACK.

B. was an employé of a lumber company, engaged in handling lumber at its sheds, situated on both sides of a spur track leading from defendant's line of railroad. The spur was built on land of the lumber company for the purpose of enabling the defendant railroad company to reach the lumber company's mill, and take away lumber. It was the custom of the lumber company's employés, including B., to place a tramway across the track from one shed to the other, when the track was not in use, and to remove it by getting down on the track, and pushing it out of the way, when a train entered the spur. The railroad company's switching crew, who moved trains in and out of the spur, knew of this custom of the lumber company's employés. Held, that B. and his fellow employés, while on the spur track, engaged in moving the tramway out of the way of a train entering the spur, were not trespassers, and the railroad company was under an obliga-

tion to them to exercise ordinary care in moving its engines and cars so as to avoid injuring them.

**2. SAME.**

A switching engine entered the spur from the main track to remove some cars of lumber, and the switching crew left the switch open behind it, though they knew a fast train would be due at the switch in a few minutes. While the switching engine stood on the spur, and B. and his fellow employés, who were ignorant of the condition of the switch, were moving the tramway out of its way, the fast train ran into the open switch, collided with the switching engine, and drove it upon B., killing him. *Held,* that the gross negligence of the switching crew in leaving the switch open, was the sole cause of the accident, which could not have been prevented by any precaution B. was bound to take with reference to the presence of the switching engine, and there was no question of contributory negligence in the case.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

L. F. Parker and B. R. Davidson, for plaintiffs in error.

Oscar L. Miles, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is the second appearance of this case in this court on a writ of error, which was sued out on each occasion by the St. Louis & San Francisco Railway Company et al., the plaintiffs in error, who were the defendants in the trial court. A. F. Miles, as administrator of the estate of James W. Brown, deceased, sued the defendant railroad company and its receivers for negligently causing the death of his intestate at Van Buren, Ark., on November 21, 1893. On the former hearing the case was submitted in connection with two other cases of the same character, which grew out of the same accident. Railway Co. v. Bennett's Adm'x, 32 U. S. App. 621, 16 C. C. A. 300, and 69 Fed. 525; Railway Co. v. Brown's Adm'r, 32 U. S. App. 632, 16 C. C. A. 682, and 69 Fed. 530; Railway Co. v. Spoon's Adm'r, 32 U. S. App. 633, 16 C. C. A. 680, and 69 Fed. 531. The judgment in the case at bar against the defendant railway company was reversed on the former hearing for reasons which are fully stated in Railway Co. v. Bennett's Adm'x, 32 U. S. App. 621, 16 C. C. A. 300, and 69 Fed. 525. We quote from the statement in the Bennett Case certain facts disclosed by the present record, which will serve to explain the circumstances under which the injuries resulting in the death of the plaintiff's intestate were sustained:

"The scene of the accident was a spur track of the railway company, which extended from its main track at Van Buren, in the state of Arkansas, between two long lumber sheds that belonged to the Long-Bell Lumber Company. The platforms of these lumber sheds were about four feet high, and the space between them in which the cars ran upon this spur track was about sixteen feet wide. It was about 4 o'clock in the afternoon of a November day in 1893. A switching engine, with its crew, had entered the spur from the main track for the purpose of moving cars on the former, and the switch had been left open. There were about fourteen freight cars upon the spur track, and between the two sheds there was an opening between two of these cars which had been made before the switching engine came upon the track. This space was about twenty feet wide. In it the employés of the lumber company had placed a tramway, one end of which rested upon timbers under the platform upon one

side of the track, and the other upon the platform upon the other side. When the railway company was not using the spur track, this tramway was used by the lumber company to enable its employés to transfer lumber across the track from one of its sheds to the other. Whenever a switching engine came upon this spur track to move cars, it had been the custom for those employés of the lumber company who happened to be nearest to the tramway to immediately jump down upon the railroad track in the space between the cars and push the tramway back under one of the platforms. At the time of this accident there were some box cars between the engine and the space where the tramway was, and about a dozen of them beyond that space. * * * The deceased was an employé of the lumber company. When the switching engine came in upon the spur track, he and five other employés of that company jumped down upon the track between the cars, and began to push the tramway back under the platform of the shed. From this hole between the lumber sheds and the platform they could not see a train or engine approaching on the railroad tracks, nor could those approaching upon the tracks see them. * * * While they were in this dangerous situation, a freight train came along the main track at a dangerous rate of speed, ran into the open switch, drove the switching engine and cars in upon the spur track, and the deceased and three of his co-laborers were caught between the cars, and killed."

On the former hearing it did not appear that any of the officers or employés of the defendant company had any knowledge that the Long-Bell Lumber Company, or its employés, had been in the habit of laying the tramway across the spur track between the lumber sheds for the purpose of moving lumber to and fro. Neither did it appear that on the occasion of the accident the presence of the deceased and his fellow laborers on the spur track between the cars was known to the defendant's employés, or that, while in the situation aforesaid, they could be seen by the servants of the railway company, who were engaged at the time in handling its engines and cars. In view of this state of facts, we held, in the Bennett Case, that, inasmuch as the victims of the accident had voluntarily placed themselves in a position of great danger, where they had no apparent right to be, and that, inasmuch as their presence on the spur track between the cars was unknown to the employés of the railway company, and the latter persons had no reasonable grounds to anticipate their presence at that place, the case disclosed no breach of duty which the defendant railway company owed to the persons who were engaged in removing the tramway, for which it could be held responsible. The record in the case at bar presents a different state of facts. It now appears that the spur track in question was constructed on land belonging to the Long-Bell Lumber Company several years before the accident occurred, and that it was so constructed by agreement between said lumber company and the defendant railway company for the purpose of enabling the latter company to reach the lumber company's mill and sheds with its cars, and to remove lumber therefrom. The testimony shows that for some years prior to the accident the tramway had been used by the lumber company for the purpose of moving lumber across the spur track, and that this fact was well known to the switching crew who did the switching at that place. Some of the witnesses say, in substance, that the regular switching crew would come to the lumber company's mill, if not every day, at least several days each week, either to set empty cars on the

spur track or to remove loaded cars therefrom, and that on such occasions they would notify the employés of the lumber company to remove the tramway whenever they found it obstructing the track. Such, it seems, had been the uniform practice for several years prior to the accident, and no officer or employé of the railway company had ever questioned the right of the lumber company to lay the tramway across the track when it was not being used for switching purposes. In short, it is conceded on both sides that the regular switching crew of the defendant company, whose business it was to set empty cars on the spur track and to remove loaded cars therefrom, were well acquainted for a long time prior to the accident with the practice of the lumber company in this respect.

One of the principal contentions on the part of the railway company is that, even on the state of facts disclosed by the present record, the deceased and his fellow employés were trespassers on the spur track while they were engaged in the customary way in removing the tramway, and that the railroad company owed them no duty for the breach of which it can be held responsible. We are not able to assent to this view. The spur track was evidently laid for the mutual accommodation of the lumber company and the railway company, and it was not used for the benefit of the public generally. It passed between and in close proximity to two sheds or storehouses forming a part of the lumber company's milling plant, which was in itself notice to the railway company that in the transaction of its business the employés of the lumber company would frequently be compelled to carry lumber across the track from one storehouse to the other. Besides, we think that the knowledge acquired by the switching crew, while in the discharge of their ordinary duties at that place, that the lumber company was in the habit of laying the tramway across the track, should be imputed to the railway company. The fact that such practice had continued for two or three years, that it was well known to all of the employés of the railway company who had duties to perform on the spur track in question, and that no one had ever objected to such use of the track by the lumber company, should be taken as equivalent to an agreement between the lumber company and the railway company that the tramway might be laid across the track when it was not actually in use by the railway company for hauling its cars.

It results from this view that the servants of the lumber company who were engaged in removing the tramway on the occasion of the accident were in no sense trespassers on the defendant's track. They were where they had a lawful right to be, and in the performance of their ordinary duties. The lumber company and the railway company were in the joint occupancy of the track where the tramway was laid, and the latter company was under an obligation to the employés of the lumber company to exercise ordinary care in moving its engines and cars so as to avoid injuring them. In view of all the circumstances of the case, as above detailed, we are unable to say that the duty which the defendant company owed to the servants of the lumber company who were engaged in the dis-

charge of their duties at the point in question differs in kind from the duty which a railroad company owes to persons at railroad crossings. If there was any difference, it was in the degree or amount of care that ought to have been exercised. That it was bound to take reasonable precautions to avoid injuring them is a proposition, we think, which admits of no controversy.

Counsel for the defendant have indulged in some criticism of the instructions given by the trial court touching the question of contributory negligence, and in some criticism of the manner in which that issue was submitted to the jury; but, from the standpoint from which we view the case, that subject may be eliminated from the discussion. It is manifest that the efficient cause of the death of the men who were removing the tramway—the single act of negligence—consisted in the fact that the switch opening into the main track some distance north of the place where the accident occurred was left open when the switch engine backed into the spur track. The switch was left open by the switching crew, although they well knew that a freight train was approaching rapidly from the north, and would be due at the switch in a few moments. Under the circumstances, the conduct of the switching crew in leaving the switch open was grossly negligent, and it must be regarded as the sole cause of the death of the plaintiff's intestate. None of the men who were at the time engaged in removing the tramway, and who were subsequently killed, were aware that the switch had been left open, and they cannot be charged with negligence for failing to take precautions to guard against a peril which was unknown to them, and which they had no reason to apprehend. In their exposed situation between the two cars, where they could not be seen, it was doubtless their duty to make their situation known to the driver of the switch engine, if it was not known to him, so as to prevent his moving down upon them of his own volition before the tramway was removed. But such precaution, if it had been taken, would not have prevented the accident in question, as they were not hurt by the voluntary action of the engineer in charge of the switch engine, but solely in consequence of the open switch, which permitted the coming freight train to leave the main track and enter the spur track. We think, therefore, that there was no evidence in the case tending to show contributory negligence, and that this issue might well have been eliminated from the charge. At all events, the defendant company is not entitled to complain of what was said by the trial court on that subject.

Some other errors have been assigned upon the record, and noticed in the brief, but they are without merit, and, in our judgment, do not deserve special notice. An inspection of the entire record has served to convince us that the verdict was for the right party, and that no errors were committed which can be regarded as prejudicial to the defendant company. Indeed, considering the undisputed fact that the switch was negligently left open in advance of the approaching train, and that this was the sole cause of the disaster, we do not see how the trial could have resulted differently. The judgment of the circuit court is therefore affirmed.