MONTAGUE v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. September 27, 1897.)

No. 880.

1. MASTER AND SERVANT—INJURY TO RAILWAY EMPLOYES—DUTY OF WATCH-FULNESS.

Where employés of a coal dealer are moving loaded cars by hand, and employés of the railroad company are engaged in switching trains from track to track, the duty to be observant of each other's actions and regardful of each other's safety rests upon both classes.

2. SAME.

Before employés of a coal dealer place themselves in a dangerous situation between cars, and out of sight, it is their duty to either notify employés of the railroad company who are switching trains from track to track, or ascertain positively that no cars will be shunted down on them while concealed.

In Error to the Circuit Court of the United States for the District of South Dakota.

R. A. Murray, C. J. Porter, Frank R. Aikens, C. O. Bailey, and J. H. Voorhees, for plaintiff in error.

H. H. Field (A. B. Kittredge and George R. Farmer were with him on the brief), for defendant in error.

Before BREWER, Circuit Justice, and SANBORN and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is a suit for personal injuries, and the sole question for consideration is whether the trial court erred in granting a peremptory instruction to find for the defendant at the conclusion of all the evidence. The plaintiff's husband, Jeremiah Montague, was killed at Madison, S. D., which is a station on the line of the Chicago, Milwaukee & St. Paul Railway Company, the defendant in error, on the morning of November 25, 1895, while he was engaged with two other persons in moving two box cars loaded with coal, which had been left standing on a side track at that station in close prox-

imity to a coal shed where the two cars were to be unloaded. For the purpose of pushing the coal cars a little further east in front of a bin in the coal shed, so that they could be more conveniently unloaded, the deceased and the two persons who were assisting him went between the two box cars, and, after uncoupling them, pushed the east car a little further east, leaving a space of about eight feet between the two cars. While they were standing on the track in the space thus formed between the two cars, and were engaged for the moment in holding the east car in place, and blocking the wheels, so that it would remain stationary, the coal car standing to the west, which had been left undisturbed, was struck by two other box cars also loaded with coal, which had been kicked or shunted down the side track from the west by an engine which was in charge of the defendant company's employés. The west stationary coal car was by this means driven suddenly against the east coal car at the end where the deceased was standing, and he was caught between the two cars, and instantly killed. For the injury thus sustained, Caroline Montague, plaintiff in error, brought the present action, alleging that the death of her husband was occasioned by the negligence of the defendant company. The testimony showed without contradiction that the side track where the accident occurred was used by the defendant railway company for the purpose of setting in coal cars to be unloaded at the coal shed where the accident occurred, and for the purpose of setting in empty cars to be loaded with grain from an elevator which adjoined the coal shed on the west. The side track in question was laid on the north side of the coal shed and elevator, in close proximity thereto, and it united with the main track at points some distance east and west of the coal shed and elevator. No regular switch engine or switching crew was employed at the station in question, but the switching at that station was done between 7 and 8 o'clock in the morning by the engine and crew of a freight train which was made up at Madison, and left that place for the west every morning at 8 o'clock. It was customary for the train crew to shunt cars down this side track to the elevator and coal shed, both from the east and the west, as happened to be most convenient; and it was also customary for the persons employed at the elevator and coal shed to move cars, which had been shunted down the track, by hand, for a short distance, when they were not left in the right position to be most conveniently loaded or unloaded. When the two box cars containing coal were shunted down the side track on the morning of the accident, a brakeman in the employ of the defendant company was stationed on top of one of the moving cars in charge of the brake, and he remained in such position, and had control of the cars, after the engine was detached, and until the accident occurred. He was looking east in the direction of the two stationary coal cars which stood in front of the elevator and coal shed, but did not see the deceased and the other persons who were with him, and was not aware of their presence on the track, because they were between the two cars, and could not be seen. Their presence in that position was not known to any of defendant's employés at the time of the accident. Although he had full control of the two moving coal cars by means of the brake, the brakeman did not arrest the mo-

tion of those cars before they came in contact with the stationary coal car, because he desired to push the stationary cars further east past the elevator, and place all the coal cars in front of the coal shed, where they could be unloaded. For some time before the accident occurred, the crew of the freight train had been engaged, in the usual manner, at and about the station, in switching cars and making up a freight train preparatory to leaving the station on the morning run, and the bell of the engine had been rung at intervals whenever the engine was in motion. According to the positive statements of the fireman and the engineer, the usual kicking signal was given, and the bell was sounded as the engine backed onto the side track, and shunted the two loaded coal cars down the track in the direction of the coal shed. There was no evidence that such signals were not given, except a negative statement by one witness, who was between the two cars in front of the elevator, to the effect that he did not hear the signals. The deceased had worked at the coal shed, and had been engaged in unloading coal from cars and in handling coal, for some time prior to the accident, and seems to have been familiar with the method of taking up and setting in cars on the side track which was pursued at that station.

In view of the foregoing facts, we are not able to say that an error was committed in withdrawing the case from the consideration of the jury. While the deceased was not a trespasser on the defendant's track at the time he was killed, yet he was there under circumstances which made it his duty to be watchful of the operations of the trainmen who were engaged in switching cars and making up a freight train, and who were doing that work on the morning of the accident in the usual way, and at the usual hour. The duty to be observant of each other's actions and regardful of each other's safety rested alike upon the men who were switching cars and upon the persons working at the coal shed who were attempting to move the two loaded coal cars into position for unloading, by hand. If either party of employés was in duty bound to be more vigilant than the other on the occasion in question, we are not satisfied that such higher obligation rested on the employés of the railway company, because the persons at the coal shed, at the usual hour for switching cars, had unfortunately placed themselves between the two box cars, in a position of great danger, where they were effectually concealed from view. Having placed themselves in that situation, where they could not be seen, we think it was their duty, before doing so, either to have given the switching crew some warning of their presence between the cars, or to have ascertained beyond peradventure that no cars would be shunted down the side track until they had had ample opportunity to place the two coal cars in position before the coal bins. Railway Co. v. Miles, 49 U. S. App. 101, 24 C. C. A. 559, 563, and 79 Fed. 257. Such precautions were not taken, and the switching crew proceeded with their work in the customary way, without knowledge or reason to suppose that any one was on the track between the two stationary coal cars.

Some stress was laid in argument on the fact that John Montague, a nephew of the deceased, testified, in substance, that on the morning

of the accident, and prior thereto, the defendant's station agent at Madison notified him that two other loaded coal cars had arrived at the station, and would be set in on the side track in front of the coal shed by the time the two loaded coal cars already at the coal shed were unloaded. The station agent testified, on the other hand, that he not only notified Montague that two other cars had arrived, but informed him at the same time that the two other cars in question were being switched by the train crew, and would be at the coal shed "shortly." We are not able to decide that such discrepancy in the statements of the two witnesses created a conflict of evidence which rendered it necessary to submit the case to the jury, for, if we accept the evidence of the witness Montague as true, we think that the information which was given to him by the station agent should have made him more watchful of the operations of the switching crew, and led him to take greater precautions for his own safety and for the safety of those who were assisting him in moving the coal cars. He was aware that all the switching at that station was done by the engine and crew of the freight train prior to its departure, that the train was scheduled to leave at 8 a. m. sharp, and that the two cars referred to by the station agent might, for these reasons, be shunted onto the side track at any moment. He does not claim to have been given any assurance that the trainmen would wait until the coal cars were unloaded before shunting the two other cars down the side track. Neither does he claim that he advised the station agent that it would be necessary to uncouple the two stationary cars, and move them by hand into position for unloading by going onto the track between the cars. In any aspect, therefore, in which the case may be viewed, we think that the evidence did not disclose facts which would have warranted an inference of culpable negligence on the part of the employés of the defendant company. It is manifest, we think, that the death of the deceased was either occasioned by an accident for which the defendant is not legally responsible, or that it must be attributed, to some extent at least, to a want of ordinary prudence on the part of the deceased and his associates. The judgment of the circuit court is accordingly affirmed.