## CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY ET AL. v. HENDRIX.

[No. 6,631.   Filed March 12, 1909.]

1. RAILROADS.—*Private Switches.—License by Invitation.*—A railroad company operating a switch upon the premises of a private manufacturing company is a licensee by invitation.  p. 415.
2. RAILROADS.—*Operating Private Switches.—Servants of Manufacturing Company.—Licensees.*—A railroad company operating a switch upon the premises of a manufacturing company, and an employe of such manufacturing company, who necessarily crosses such switch, are licensees by invitation, and such railroad company is under the duty of exercising ordinary care to prevent injuries to such servant.  p. 415.
3. PLEADING.—*Complaint.—Demurrer.—Motion in Arrest of Judgment.*—Where the complaint is sufficient a motion in arrest of judgment should be overruled.  p. 416.
4. RAILROADS.—*Private Switch to Manufacturing Company.—Operation.—Injury to Servant of Manufacturing Company.—Negligence.—Contributory.—Jury.*—Evidence showing that a railroad company built a switch upon the premises of a manufacturing company, the former owning the track, that the plaintiff was a servant of such manufacturing company and was required to cross such switch, that the railroad company's custom was never to operate upon the switch at any time during the working hours of such manufacturing company, that on the day in question, while the plaintiff, during working hours, was crossing such track between two box-cars, and without notice to plaintiff, such company suddenly backed against one of such box-cars, causing it to

rebound against the plaintiff, to his damage, sustains a verdict for the plaintiff that the railroad company was negligent and the plaintiff free from contributory negligence. p. 416.

5. TRIAL.— *Instructions.— Railroads.— Licensee by Invitation.— Care.*—An instruction, in an action by a servant of a manufacturing company against a railroad company for injuring him in its operation of a private switch in said manufacturing company's plant, on the theory that the plaintiff was a bare licensee upon the company's track—rendering the company liable only for wilful injuries—was properly refused. p. 420.

6. PLEADING.— *Complaint.— Master and Servant.— Operation of Railroad Switch.—Injury to Manufacturing Company's Servant.*— A complaint alleging that defendant manufacturing company permitted a railroad company to operate a private switch in the manufacturing company's plant, contrary to custom, knowing that such operation would imperil plaintiff, who was required to cross such switch, and failing to notify him of such operation, to plaintiff's injury, is bad, since it fails to show (1) that defendant knew that plaintiff was ignorant of the danger, (2) that if warning had been given plaintiff could have escaped, and (3) that defendant knew of the railroad company's action in time to notify plaintiff thereof. p. 420.

From Clay Circuit Court; *Ared F. White,* Special Judge.

Action by Benjamin H. Hendrix against the Chicago & Eastern Illinois Railroad Company and another. From a judgment for plaintiff, defendants appeal. *Affirmed in part. Reversed in part.*

*Lamb, Beasley & Sawyer, George A. Knight* and *Sullivan & Knight,* for appellants.

*Payne & Miller* and *Wymond J. Beckett,* for appellee.

COMSTOCK, P. J.—Appellee sought to recover damages for personal injuries sustained by him, while attempting to cross the track of appellant railroad company leading into the yards of appellant McRoy Clay Works, on account of the alleged joint negligence of the appellants. Appellants' separate demurrers to the one paragraph of complaint were overruled, and the cause was tried by jury upon the issues joined by appellee's complaint and appellants' separate answers in general denial thereto. A general verdict was returned for $4,000 damages in favor of appellee and against

the appellants jointly. With the verdict the jury returned answers to interrogatories.

The appellants' separate motions for judgment in their favor on the answers to interrogatories submitted by each, for a new trial, and in arrest, were overruled, and judgment rendered upon the verdict. These rulings are assigned as error.

Appellant railroad company insists that as against it the complaint is insufficient because (1) it fails to show a duty owing by it to the appellee at the time and place of the accident; (2) it shows that the relation of master and servant did not exist between appellee and appellant railroad company at the time of the accident; (3) the appellee in crossing said track was a mere licensee, to whom said company owed no duty of protection against its acts of negligence; (4) no actionable negligence is charged against the railroad company.

Among other things, the complaint shows that the appellant railroad company operated, at and prior to the time and place of the injury complained of, a line of railroad, with a switch or spur leading off from its main track and extending into the enclosed yards and factory of appellant McRoy Clay Works, for the purpose of conveying cars into and out of said factory yard. The appellee was at the time of the injury employed by appellant McRoy Clay Works. Each employe was required by the rules of said clay works to enter and leave said factory through the office morning and evening for registry. This was the only way by which the employes of said factory could reach their work. The switch or spur of the appellant railroad company was located between the office building and the factory building, so that the employes were required at all times to pass over said switch track in going to and from their work. The track was depressed about three feet below the surface of the ground at the point where the appellee and other employes were required to cross, and was in-

clined to the southwest. It was the rule, custom and practice of appellant clay works not to permit the appellant railroad company to move cars upon said switch during the working hours—between the hours of 7 o'clock a. m. and 5:30 o'clock p. m. of each day. The crossing was effected in different ways. Sometimes the men crossed on a tramway laid over the track, sometimes through the open car doors when they were opposite the registry office, sometimes between the cars, over the bumpers, when the cars were loaded or the doors closed, sometimes at the south end of the cars, on the wagon road. On the day in question appellant McRoy Clay Works left two box-cars opposite said registry office upon said switch, uncoupled and about three feet apart, for the employes to pass between. As appellee was passing over said switch track and between said loaded box-cars, they were run together by appellant railroad company, and appellee was caught between the couplers and injured.

The complaint further alleges that the railroad company was guilty of negligence, which was the proximate cause of the injury, in this: "That it ran a locomotive engine into said yards and upon said switch, and commenced moving cars on said spur-track before the men in said factory had passed out of said factory across said track into said registry office, and negligently ran said locomotive against said box-cars, standing upon said switch, at a high and dangerous rate of speed, at a time when the employes of appellant clay works, including this plaintiff, were passing over said track." It is also alleged that the appellee did not know that said engine was upon said track, and was about to be run against said box-cars standing upon said track, or that said cars would be moved before he had crossed said track; that the employes of the railroad company in charge of said locomotive engine and train of cars knew that the employes of said appellant clay works were passing over said track at said time, and were accustomed each day to pass over said track, and negligently failed to notify said em-

ployes, including this plaintiff, that they intended to move said cars before said employes had passed over said track; that the appellant railroad company negligently ran its locomotive against said cars at a high and dangerous rate of speed, and negligently struck said cars with unnecessary force, and thereby negligently caused said cars to move rapidly down said grade and against this plaintiff, without his fault, to his damage.

Upon the proposition that appellee was a mere licensee, numerous cases are cited by appellant, among which the case of *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308, is claimed to be almost identical with the case at bar. That decision holds that to a licensee, under the facts of that case, the railroad company would be liable for active negligence, but that the negligence charged against the railroad company was not proved. In the other cases cited, the injured persons were either mere licensees or trespassers from the beginning, or became such by exceeding an implied license. Said cases are applicable to show the measure of duty owing to bare licenses, but appellee was on the premises of appellant clay works by invitation of his employer. He was where he had a right to be. The appellant railroad company was also upon the premises of appellant clay works by invitation. They were both licensees upon the invitation of the same party, occupying the same relation to the clay works. The law distinguishes between a bare licensee and one upon the property of another by invitation. They owed to each other the duty to exercise ordinary care to avoid injuring one another. The following cases are in point: *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234; *St. Louis, etc., R. Co.* v. *Miles* (1897), 79 Fed. 257, 24 C. C. A. 559; *Hudson* v. *Atlantic Coast Line R. Co.* (1906), 142 N. C. 198, 55 S. E. 103; *Missouri, etc., R. Co.* v. *Taylor* (1906), 73 Kan. 482, 85 Pac. 528; *Pomponio* v. *New York, etc., R. Co.* (1895), 66 Conn. 528, 34 Atl. 491, 32 L. R. A. 530, 50

Am. St. 124; *Pittsburgh, etc., R. Co.* v. *Simons* (1907), 168 Ind. 333. There was no error in overruling the demurrer of the railroad company to the complaint, and its motion in arrest was properly overruled. *George* v. *Robinson* (1905), 36 Ind. App. 310; *South Shore, etc., Electric Co.* v. *Ambre* (1909), 44 Ind. App. —, 87 N. E. 246, and cases cited.

It is argued in behalf of appellant railroad company that the verdict is not sustained by sufficient evidence. It is admitted, for the purposes of trial, that said appellant constructed, owned, controlled and operated the track in controversy, known as spur-track No. 1, and that its track passed down through the yards of the McRoy Clay Works. It is agreed that the fee simple of the land on which the track is constructed belongs to and is owned by the McRoy Clay Works; that the railroad company owns and controls an easement over the land for the purpose of its road and track, and so owned them at the time of the accident, and long prior thereto. Appellee testified that on the night he was injured the sun set at 5 o'clock. He could not recognize any one at a distance of fifteen to twenty feet. It was dark. He stopped and listened, and looked up the track to see if he could see a train. He did not hear anything, nor did any one, before he went down between the cars at the crossing, call his attention to the fact that there was an engine in the yard. He went down in the usual and ordinary way. He did not see the engine before he was hurt, and when he attempted to cross the track did not know that appellant railroad company was going to move the cars. He had never known said company to attempt to move the cars when the men were crossing. The cars were between two and three feet apart where he attempted to cross, and the opening was directly in front of the registry office, at the exact place where the board lay. He came up to the track, and looked and listened to see if he could see or hear any-

thing. He stepped down on the pins at the ends of the conduits, and started to go across, and just as he got between the bumpers one car was pushed against the other and he was caught. He heard no bell ringing or whistle blowing as he stepped down. No one said anything to him about the engine's being in the yard. He did not know whether the factory was closed when he attempted to cross the track. In approaching the track he walked along at an ordinary pace. He did not hear the cars coming together at the time he attempted to cross the track. His hearing was not good, but he was not deaf. He could hear a person speaking at a distance of from fourteen to twenty feet. He knew the switch track was there for the purpose of taking out the product of the plant. Sometimes he crossed the track by going through an empty box-car, at other times he stepped down on the base and walked across the track when the plank was not there, always crossing at the same place. He never crossed any other way except on the plank or between the cars. He knew of no other way to get to the registry office. He did not know of the wagon road around the south end of the track. He used all his senses of sight and hearing in attempting to cross, as he had been in the habit of doing for twenty-one days, and was without knowledge of the impending danger.

The evidence shows that it was the custom of appellant railroad company not to move the cars upon this spur-track until the men had passed over the track and registered. This fact was testified to by various witnesses who had worked in the factory for at least four years. They had never known them to move cars immediately after 5:30 o'clock p. m. It took the men about three minutes to march out of the factory. The register clock would show 5:31, 5:32 and 5:33. This custom was known to employes of both appellants. On the evening in question appellant railroad company did not wait after the whistle blew, but the

foreman proceeded immediately to couple said cars.     The appellant railroad company's agents and servants in control of the locomotive knew, or could have known by the exercise of ordinary care, that the men were passing over the track to the registry office at the time they commenced moving the cars.   A. O. Shipley, who had worked for appellant in that yard for years, testified that, as a general rule, they waited until the boys got over the track, but that on that particular evening they were in a hurry.   He knew that the men were crossing in front of the registry office, and that some of them would likely be upon the track when the cars were moved.   The employes of the McRoy Clay Works crossed over the track from the registry office on a tramway or board.   Usually this was across the track both morning and evening.   The employes of the railroad company testified that they had frequently removed this board when they came in to move the cars after the whistle blew. Steps had been made on each side of the track by driving scantlings into the conduits which formed the wall of the depressed or lowered track, and when the board was not there the men walked down one side and up the other. These steps were placed at the point where appellee crossed the track.   Witnesses for appellant railroad company testified that they knew it was the custom of the men, immediately after the whistle blew, to rush out of the factory and pass over the track to the registry office; that the majority crossed in front of the registry office, and all knew the fact of the men's crossing.   Upon the foregoing evidence the questions of contributory negligence of the appellee and the negligence of appellant railroad company were properly submitted to the jury, and their verdict upon this proposition had sufficient evidence to sustain it.

The following facts, among others, were found by the jury in answers to interrogatories:  There was a car standing one foot south of the south side of the place where appellee attempted to cross the track.   If he had looked he could not

have seen the approaching car in time to avoid being struck by it before attempting to cross. Neither the engineer nor other servants of appellant railroad company in charge of the cars knew, in time to avoid striking and injuring appellee, that he was crossing the track. Appellee could, by going seventy-five feet south of where he attempted to cross, pass around the track in safety. He did not know that at such point he could pass around the track in safety. He was not perfectly familiar with the location of the track and the general surroundings. The track was located in a cut about three feet below the adjacent ground. The locomotive and cars at the time were being backed to couple on to eight or ten cars that were standing north of the place where appellee attempted to cross. Before attempting to cross he looked in the direction of approaching cars. He could not see them. The appellant railroad company used the switch track upon the premises of the clay works when taking cars into or bringing them out from said premises. At the time of appellee's injury the railroad company was engaged in leaving empties, or taking out loaded cars of appellant clay works' products, and placing them on the main track to be transported to market. At the time appellee was injured the superintendent of the McRoy Clay Works had authority to direct the kind of work he was to perform. The railroad company had no authority over appellee at the time. The engineer could not see the appellee, as he attempted to cross the track, in time to stop the train and avoid the accident. The darkness obstructed the view of the approaching train, when the same was 100 feet distant from the place where he attempted to cross. Appellant railroad company's track curved to the east at a point about 100 feet north of the place where appellee attempted to cross. He attempted to cross from the west to the east. He listened for the noise of an approaching train before attempting to cross. The approaching cars bumped against the ones that were standing on the track. If appellee had

listened he could not have heard this noise in time to avoid the injury. The railroad company owned the track and right of way. The appellee could not have avoided being struck if he had exercised ordinary care, or if he had exercised the care of an ordinarily prudent and cautious person. There was evidence to support the foregoing findings.

Complaint is made of the refusal to give instructions one, three, four and five. Each of these instructions was based upon the theory that appellee was a mere licensee. 5. They were properly refused. Instructions ten, thirteen, fourteen and fifteen, requested by appellant and refused, were substantially covered by other instructions given to the jury. These instructions, it is argued in behalf of appellant, are based upon a theory antagonistic to the theory of the complaint, which shows that appellee was a mere licensee, using the track for his own convenience, and that the company owed him no duty to protect him against its simple acts of negligence, and that they were not therefore pertinent to the issues. What we have already said upon the complaint, viz., that appellee was more than a bare licensee, and that he was upon the premises, as was the railroad company, by invitation, applies here. The instructions were not antagonistic to the theory of the complaint.

The specific acts of negligence charged against appellant clay works, which are alleged to be the proximate cause of appellee's injuries, are: That it knew that said first-6. named appellant had brought its said engine into said yard, and upon the spur-track, and was about to move said cars upon said spur-track, and negligently failed to notify this appellee of said fact; that appellant clay works knew that its said employes, including this appellee, were, at the time, passing over said track to said office, and leaving said yard, and negligently failed to notify appellee that said engine had come into said yards, was upon said track, and was likely to strike and move said cars, and thereby imperil this appellee's life, but negligently per-

mitted appellee to pass between said cars at said time, and negligently permitted said cars to be run by said appellant railroad company against appellee, without giving him any warning of said dangers, and without keeping the space between said cars safe for him to pass over in going from his working place to said registry office, as was its duty so to do, but negligently permitted said engine to come into said yard upon said spur, and move said cars upon said spur at said time, contrary to said rules, customs and practice of said yard, and negligently permitted said engine to be moved down said grade upon said track by said first-named appellant, and strike said cars and drive the same together, and injure this appellee at the time he was passing between said cars as aforesaid, in front of said office as aforesaid, all without his fault, and to his great injury and damage.

Among the objections made to the complaint by appellant clay works are the following: No facts are stated showing that said appellant knew that appellee was ignorant of the threatened danger. It does not appear by direct averment that if said appellant had warned appellee that the railroad company had entered the yard with its engine, and was intending to move the cars, that appellee could have escaped the injury, nor that said clay works had knowledge of the action of the railroad company in time to warn appellee of the danger, so as to enable him to escape the injury. These objections were, we think, well taken, and the court erred in overruling the demurrer of the appellant clay works to the complaint.

Judgment affirmed as to the appellant railroad company and reversed as to appellant McRoy Clay Works, with instructions to sustain its demurrer to the complaint, and that appellant McRoy Clay Works recover its costs against the appellee, and for further proceedings not inconsistent with this opinion.