## LARSON v. TRI–CITY ELECTRIC SERVICE CO.

### No. 8070.

Circuit Court of Appeals, Seventh Circuit.

Jan. 20, 1943.

694

Ora L. Wildermuth, Russell H. Nehrig, and Geo. E. London, all of Gary, Ind., and J. B. Walters, of Hammond, Ind. (Wildermuth & Force, of Gary, Ind., and M. Clyde Brown, of Hammond, Ind., of counsel), for appellant.

Timothy P. Galvin, Francis J. Galvin, and Edmond J. Leeney, all of Hammond, Ind., for appellee.

Before EVANS, SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment for plaintiff for personal injuries, insisting that the trial court (1) erroneously refused to define the legal relationship of plaintiff and defendant as one imposing upon defendant liability only for wanton and willful injury, (2) should have directed a verdict of not guilty because (a) no negligence of defendant was proved, (b) under the evidence plaintiff was guilty of contributory negligence as a matter of law, and (3) erred in instructing the jury.

At the time of the injury Linde Air Products Company was having constructed a plant in East Chicago, Indiana. Plaintiff was one of the employees of a subcontractor installing the pipes; defendant a subcontractor completing the electrical wiring and connections. Crews of each company were working in the compressor room some 250 feet long north and south and about 40 feet wide east and west. Plaintiff and his associates were installing hangers above and for the ammonia pipe, some twelve inches in diameter, located above the floor and about 18 inches from the east wall. On this pipe plaintiff was standing.

Above the pipe was a steel supported I beam on top of which were a rail and track for a traveling crane extending east and west across the room, a part of the regular equipment of the plant, which traveled on the track above the I beam and a similar track near the west wall. Running north and south were the crane rails, supported by the I beams, the span being 37 feet and 10 inches across the entire width of the room. The wheels of the crane were unguarded. A carriage borne by the crane could be moved from one end to the other so that, as the crane moved, it could be manipulated to pick up any object anywhere on the floor of the room, by means of a control box located 4 feet from the west wall of the room, suspended from the crane by a cable and containing wires connecting the electric control with the crane motors. On the box were six push buttons which, when operated, would cause the crane to move forward or backward or up or down. The operator had only to push the appropriate button and keep it depressed as long as the thus initiated operation was desired. When the pressure was released the crane would stop after traveling about a foot. The operator moved with the crane and could observe everything in front of him. The crane had only one speed, 50 feet per minute. Neither plaintiff nor defendant had anything to do with its installation but found it in the plant when they entered upon their respective labors. They and other contractors used it to set pipes and machinery and move articles. Defendant made use of it in installing lighting conduits on the ceiling and pulling wires through the conduits. One Strohl was operating it for defendant at the time the accident happened.

Plaintiff and his fellow workmen were replacing temporary wire hangers with permanent hangers to carry the ammonia pipe along the east wall. Each hanger extend-

ed from a plate above, to which it was attached, to the pipe below, where two straps encircling the pipe were bolted together above and below the pipe and on the top side fastened to the hanger rod, threaded at the end. In installing a hanger the bolt which fastened the encircling straps at the top of the pipe was left loose and the one which fastened the straps underneath the pipe was left out. The workmen first inserted the upper threaded end of the hanger rod in a hole in the hanger plate attached to the I beam. The straps were swung apart on their upper loose bolt and placed around the pipe and bolted together at the bottom. Both top and bottom bolts were then tightened to clamp the straps firmly around the pipe and the nut on top was screwed onto the lower threaded end of the hanger rod, which extended down from the plate above. The hangers were 10 feet apart.

Plaintiff and his associate were installing the third hanger of the day when the accident occurred. They had placed a ladder on the floor, leaning it against the pipe. Ney stood on the ladder; plaintiff on the pipe. To handle the task properly two men had to work together. Ney put the bottom bolt through the clamps and first tightened it and then the bolt above the pipe, while plaintiff, standing on the pipe, screwed the nut down on the end of the rod at the hangar plate. The nuts fit tightly and could be turned only by a wrench. This necessitated some strain in plaintiff's position so that he had to hold on to something so that, if the nuts began suddenly to turn more easily, he would not lose his balance and fall. He testified that the only safe place to put his left hand was on the crane rail; and this he did, when he began pulling on the wrench. While in this position, holding on the crane rail with his left hand and turning the nut with his right hand, one of the wheels of the crane ran on to his hand and so injured it as to necessitate amputation.

Plaintiff testified that when he put his hand on the rail to support himself, he looked and saw the crane about 8 feet from him, standing still, and that, as he continued his work, he looked up from time to time to see if it had moved or was going to move; that he had to give some attention to his wrench and could not look at the crane all the time; that he turned the nut a few times and then looked up again; that he looked often enough to see whether the crane was coming; that he kept a picture of the crane in his mind, but that he did not see the crane move until it hit his hand. He tried to escape it but was too late; he cried out loudly and the crane stopped and was finally backed off his hand. He then walked to the ladder and down it. He testified that he heard no warning of any kind that the crane was to be put in motion or was in motion.

The operator of the crane for defendant, located opposite plaintiff, testified that he got a signal from the electrical workers to move the crane; that he looked at, and saw nothing on, the rail. He then looked to see that the electrical workers were in the clear, then back to the crane rail and then thought he saw something on the rail and stopped the crane. He heard somebody call out and immediately reversed the crane. He had seen men other than electricians working on or about the pipes; and he knew that they were working on the pipes before the accident happened and, at the time he put the crane in motion, that men were working or were likely to be working on the pipes underneath the crane. Plaintiff testified that earlier in the day when he heard that the crane was to be moved, he told defendant's servants in charge to go ahead but to "watch us; we will be working around here right along." The foregoing evidence is somewhat controverted but, obviously, the credibility of the witnesses was for the jury.

■ We think the relationship of plaintiff and defendant was not such that defendant owed plaintiff a duty merely not wantonly or willfully to injure plaintiff. Plaintiff and its employees and defendant and its employees were each occupants or tenants of the plant for the purpose of performing their respective subcontract. Neither had any right to possession other than as such subcontractor. Each was present at the invitation of the owner and the general contractor; each of them was granted use of the plant and its equipment for the purpose of and to the extent necessary in performing its respective legal obligation. Neither had any authority over the other or over its employees; each of them was a co-tenant with equal rights and equal privileges and consequently must be held to the duty of co-tenants in use of common property or of fellow-travelers on the highway, each of whom is rightfully in the place occupied,—a duty to exercise reasonable care for the safety of the co-tenant or the fellow-traveler.

■ Defendant contends that plaintiff was a licensee of defendant. This conclusion we think is supported by no premises in evidence. A license imputes permissive authority from one occupying a superior position. A licensee has no right to occupancy except by permission of one in authority, and courts have quite frequently held that, as a result of the limited right to occupy, the licensee is entitled to no protection from the licensor except that the latter shall not wantonly injure him. But where as here, plaintiff and defendant are equal in their rights and each is a person invited on the premises by a third person, who occupies a position of superior authority, there arises no basis for limitation of liability of defendant on the ground that plaintiff is defendant's licensee. Samuel E. Pentecost Construction Company v. O'Donnell, Ind.App., 39 N.E.2d 812; Chicago & E. I. R. Co. v. Hendrix, 43 Ind. App. 411, 87 N.E. 663. In the case first mentioned, the Appellate Court of Indiana quoted with approval from Fidelity & Casualty Co. v. Llewellyn Iron Works, 42 Cal. App. 766, 184 P. 402, the language of which is pertinent to the issue involved in this case. Plaintiff and defendant, being on equal footing, the trial court rightfully held that each owed to the other the duty to exercise the ordinary care of a reasonable prudent man for the safety of the other.

■ Defendant insists that plaintiff failed to exercise due care for his own safety when he placed his hand on the crane rail and that by failure to warn defendant of his intention to use the rail he should be held guilty of contributory negligence as a matter of law. Plaintiff was in a place and doing work necessitated by his employment. He testified that he told defendant's employees to be on guard for him and his fellow workman and that the latter would be working where they were then working "right along." He was within a well-nigh unobstructed view of the operator at the crane switch station near the floor below him. He testified that he looked up frequently enough to feel safe, noted the position of the crane and divided his time between necessary views of the hand work in which he was engaged and the position of the crane. In this situation, having advised defendant of the constant presence of men and having asked defendant to watch out for them, knowing that the person in control of the crane could see him, and that the crane was used only at intervals, not as a regular operation of the plant, but as a means for traveling only occasionally to a new place to install wiring, plaintiff had a right to submit to the jury whether a reasonably prudent man would have done as he had done.

■ Defendant insists further in this connection that plaintiff might have proceeded in a safer manner and that by choosing the less safe method he failed to exercise reasonable care for his own safety. The question is not whether the safer or safest method was used but whether the ordinary care of a reasonably prudent man was used under the then existing circumstances. To require the safest method is to require the greatest care, whereas what is required is the ordinary care of a reasonably prudent man. Jenney Electric Mfg. Co. v. Flannery, 53 Ind.App. 397, 98 N.E. 424, 428; City of Linton v. Maddox, 75 Ind.App. 449, 130 N.E. 810. In the first cited case the court said "Whether the doing of a certain act, or the failure to do it, in a particular way constitutes due care, or the want of such care, should generally be left to the jury in the light of the evidence. It is only in cases where the facts are undisputed, and where only a single inference can be reasonably drawn therefrom, that the court can say, as a matter of law, that a certain course of conduct does or does not constitute reasonable care. 'It is only when the standard of duty is fixed and certain, or where the measure of duty is defined by law, or where the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law and not of fact.'" We think the true rule is expressed thus: "If, in the performance of his duties, two or more methods are open to him, and he has no instructions to pursue one in particular, he necessarily must choose between them; and he cannot be said to have been negligent, if he, in good faith, adopts that which is more hazardous than another, provided the one pursued be one which reasonable and prudent persons would adopt under like circumstances. Any other rule would require the servant to be measured by the standard of every prudent person; for only extremely cautious persons adopt the least hazardous course, where both are considered safe and appropriate. For this reason, it cannot be held, as a matter of law, in all cases where a servant is injured while pursuing a method voluntarily adopted by him, more hazardous than oth-

er available methods, he is guilty of contributory negligence; for non constat the method pursued may be one which prudent persons would ordinarily exercise under like circumstances. Ordinarily the question of contributory negligence is one of fact for a jury, under proper instructions from the court; and it is only in those cases where the conclusions and inferences to be drawn from facts in evidence are indisputable, involving a common instinct of mankind—self-preservation—that it becomes a question of law." An issue should not be withdrawn from the jury where upon a given state of facts reasonable men may differ as to whether negligence has been proved. It is only where the facts are such that from them all reasonable men would draw the same conclusion that the question of negligence ceases to be one of fact for the jury and becomes one of law for the court.

Further it appears that the evidence is disputed as to whether there were other safer methods. Defendant insists that plaintiff could have held onto the outside flange of the I beam. Plaintiff says that holding to the crane rail was "the only way he could stay up there." Defendant says he could sit astride the pipe, thereby making any handhold unnecessary; but plaintiff did not think this was possible; and said to do so would not have prevented him from falling and that he did not believe he could safely sit astride the pipe, for, if the wrench slipped, he would have no handhold. Defendant suggests that plaintiff should have hung on to the hanger rod, but it was loose at the point where the strap passed around the pipe and plaintiff was engaged in tightening it and would have pulled it out of position if he had used it as a handhold. Defendant accuses plaintiff of negligence in failing to use another ladder to perform this duty but offered no evidence of the practicability of this method. Furthermore there is evidence in the record that compressors were in and about where the work was being done and that it would have been necessary to pitch the ladder almost perpendicularly so that it would not have furnished a steady balanced working place. Finally plaintiff suggests that a platform which had been used in installing other hangers should have been utilized or another built. Again the record is silent as to the advisability or practicability of use of the platform. It belonged to the plant but whether it could be used again and whether it could have been moved to this place is not shown. We think that the suggestion of defendant was proper argument for the jury but no basis for finding as a matter of law that plaintiff was guilty of contributory negligence.

 Nor did the court err in refusing to direct a verdict on the ground that defendant was not guilty of negligence. Plaintiff had testified to warning defendant of the presence of himself and Ney; the operator of the crane was in well-nigh if not complete full view of plaintiff. The jury may well have believed that if defendant's servants had looked they would have seen plaintiff. Nothing obstructed their view; the operator of the crane saw men working about the pipe and near the crane from time to time on the day of the accident. Without warning, the crane was started and passed over plaintiff's hand. These facts, it seems to us, necessitated submission to the jury.

 Defendant insists that the court erred in modification of Instruction 3 tendered by defendant. In this the court was requested to charge the jury that as a matter of law where there are two ways of doing work, one safer than the other, it is the duty of the workers, in the exercise of due care, to adopt the safer way and if he adopts the more dangerous one, he fails to exercise due care for his own safety. The court modified this by saying that if workers undertake to do work by the dangerous method, the jury may consider that fact, if it finds it to be a fact, and that it must then consider that fact in determining whether plaintiff failed to exercise the degree of care required for his own safety. In other words the court instructed the jury that the fact if proved was proper to be considered by them and left to them to determine from all the evidence whether plaintiff had exercised due care. The court avoided any attempt to take from the jury its right to pass upon the facts but left to them the entire issue. Defendant objects because the court inserted the word "practical" but we think there was no prejudicial error in this.

 Defendant argues that the court erred in modifying its tendered Instruction 4 by which the court was asked to charge the jury that if plaintiff knew that defendant was making use of the crane, then it was plaintiff's duty to notify defendant of his intention to make use of the track upon which the crane ran by placing his hand thereon and that if the jury believed that plaintiff failed to give such notice, it

might find that plaintiff had failed to exercise due care. The court modified the instruction by inserting a statement that it was plaintiff's duty to exercise due care for his own safety, and, if such due care required him to notify defendant of plaintiff's intention to make use of the track, and if it further found that plaintiff failed to give such notice to defendant "then you may take that fact into consideration, along with all of the other facts and circumstances in the case, to determine whether or not he used ordinary care for his own safety, whether he was guilty of contributory negligence proximately contributing to his own injury." We see no error in the modified instruction. The court was extremely careful to advise the jury that all the facts and circumstances were to be considered, including the fact, if it were a fact, that plaintiff had failed to notify plaintiff. Whether sufficient notification was given was a question of fact. Plaintiff affirmed, defendant denied it. Whether it was given was a question for the jury and whether it was necessary under the specific facts and circumstances as a part of due care upon the part of plaintiff was likewise for the jury.

The judgment is affirmed.