<hr />

[15014. Department Two.—June 13, 1893.]

CITY AND COUNTY OF SAN FRANCISCO, RE-SPONDENT, v. ANNIE KIERNAN ET AL., DEFENDANTS. SOPHIE E. COLLINS ET AL., APPELLANTS.

CHARTER OF SAN FRANCISCO—AUTHORITY OF SUPERVISORS TO WIDEN STREETS—ACT OF 1863.—The act of April 25, 1863, authorizing the board of supervisors of the city and county of San Francisco to widen streets and to provide compensation therefor, is still in force, and unrepealed.

ID.—ACQUISITION OF LAND.—Though the act of 1863 did not provide for the acquisition of land by condemnation proceedings, or otherwise than by agreement for compensation with the owners, it was not impliedly repealed by the act of 1864 authorizing condemnation proceedings, which expressly continued the act of 1863 in force.

ID.—AMENDMENT OF CONSOLIDATION ACT—EFFECT OF POLITICAL CODE.—The act of 1863 must be regarded as amendatory of the Consolidation Act, and consequently not repealed by any provision of the Political Code, section 4372 of which expressly continued in force all acts consolidating cities and counties, and acts amendatory of or supplementing such acts.

ID.—CONSTITUTIONAL LAW—ACT OF 1863 NOT UNCONSTITUTIONAL.—The act of 1863 was not repealed by section 14 of article I. of the state constitution, nor was it repugnant to section 19 of article XI. of the constitution of 1879.

ID.—OPENING OR WIDENING STREETS NOT AUTHORIZED BY STREET LAW OF 1883.—The general Street Improvement Act of 1883 is only applied to improvement upon existing streets, and does not authorize the city authorities to open or widen any street, nor to acquire land for that purpose; and that law is not inconsistent with the act of 1863 authorizing the supervisors of San Francisco to widen streets.

ID.—CONDEMNATION OF LAND FOR WIDENING STREET.—Where the city of San Francisco, by proper proceedings, had under the act of April 25, 1863, determined to widen a street therein, it was competent for it to acquire by condemnation the land necessary therefor in the manner prescribed in the Code of Civil Procedure.

ID.—CONTINUANCE OF PROCEEDINGS UNDER ACT OF 1889.—Proceedings for the widening of a street in San Francisco, begun by an order for publication of notice of application therefor, made by the supervisors within eighteen months before the passage of the act of March 6, 1889, may be continued under that act, according to the terms of section 24 of that act.

ID.—CONSTITUTIONALITY OF ACT OF 1889—SUBJECT EXPRESSED IN TITLE.—Section 24 of the act of March 6, 1889 (Stats. 1889, p. 70), which purports to validate former proceedings for the widening of streets, and which is entitled "An act to provide for laying out, opening, extending, widening," etc., any street "in municipalities, and to condemn and acquire any and all land and property, necessary or convenient for that purpose," sufficiently expresses its subject or purpose in its title.

ID.—CONDEMNATION PROCEEDING—ASSESSMENTS FOR WIDENING STREET—IRRELEVANT OBJECTION—CONDEMNATION OF LANDS NOT ASSESSED.—In a proceeding to condemn property for the widening of a street, an objection that the property benefited was not lawfully assessed for the costs and expenses of the improvement is irrelevant when urged by parties whose property does not appear to have been assessed. Whether the money paid for condemning land was obtained through regular or irregular assessments upon the property of others does not affect the right to condemn lands not assessed.

ID.—AVERMENT OF NECESSITY—FORM OF COMPLAINT—EVIDENCE OF NECESSITY—CONSTITUTIONAL LAW.—Section 18 of the act of 1889, as to the form of the complaint in an action to condemn land as respects the averment of necessity, is not unconstitutional, and the question whether the provision that "the resolution and ordinance ordering said work shall be conclusive evidence of necessity," does not arise upon appeal, where the record does not show that evidence was offered or rejected upon the issue of necessity.

ID.—DAMAGES—INJURY TO BUSINESS—INSUFFICIENT OFFER OF PROOF.—The general rule is that in actions to condemn land for public use, no damages can be allowed for injury to business caused merely by the improvement, and not by the taking of the property, and where a general offer is made to show damage to business on the line of the proposed widening of a street, without specifying the nature of the alleged damages, or whether the business was done on the land taken, or on the land damaged, for which compensation was awarded by the jury, it does not appear that the proffered testimony is competent, and no error appears in its exclusion.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Henry E. Highton,* for Appellants.

*John H. Durst,* for Respondent.

VANCLIEF, C. — Action to condemn land for the purpose of widening Mission Street in the city and county of San Francisco, in which judgment was rendered in favor of plaintiff. Six of the nine defendants have appealed from the judgment, and from an order denying their motion for a new trial.

The action was commenced April 1, 1890, and the complaint conforms to the act of March 6, 1889, entitled "An act to provide for laying out, opening, extending, widening . . . . any street . . . . within municipalities, and to *condemn and acquire* any and all land and property necessary or convenient for that purpose." (Stats. 1889, p. 70.) But the order of the board of supervisors for the widening of Mission Street, on which the proceeding to condemn is alleged to depend, was made on April 7, 1888, pursuant to a previous resolution of the board, passed November 14, 1887, declaring the intention of the board to make such order according to the provisions of "An Act to confer further powers upon the board of supervisors of the city and county of San Francisco." (Approved April 25, 1863, Stats. 1863, p. 560.)

1. The principal point made by counsel for appellants is that the act of April 25, 1863, had been superseded and wholly repealed before the board declared its intention to widen Mission Street, that there was no other law in force during these proceedings authorizing the board to *widen* a street, until the passage of the aforesaid act of March 6, 1889; and, therefore, that the order to widen Mission Street was without authority, and void.

*First.* It is claimed that the act of April 25, 1863, was impliedly repealed by the act of April 4, 1864 (Stats. 1863–64, p. 347), which was itself repealed by act of March 30, 1868. (Stats. 1867–68, p. 555.)

It is to be observed that while the act of April 25, 1863, authorized the board to widen streets and to provide compensa-

tion to owners of land taken or damaged, it did not authorize the condemnation of land for that purpose. The act of March 30, 1864, substantially covered all the ground occupied by the act of April 25, 1863, and in addition thereto, authorized the condemnation of land, and provided the mode of making compensation therefor; but by section 21 it expressly declared: "This act shall not be construed to repeal an act to confer further powers upon the board of supervisors of the city and county of San Francisco, passed April 25, 1863, but the provisions of that act shall be held not to apply to the proceedings provided for in this act." I think the effect of this section was to leave the act of April 25, 1863, in force and available for the purpose of providing compensation and acquiring the necessary land *by agreement* with the owners. (Lewis on Eminent Domain, sec. 248, and authorities there cited.)

*Second.* It is claimed that the act of April 25, 1863, was repealed by section 4372 of the Political Code. Section 19 of that code, however, declares:—

"Nothing in either of the four codes affects any of the provisions of the following statutes, but such statutes are recognized as continuing in force notwithstanding the provisions of the codes, except so far as they have been repealed or affected by subsequent laws.

"2. All acts consolidating cities and counties, and acts amendatory or supplementing such acts."

The act of April 25, 1863, being "An act to confer further powers upon the board of supervisors of the city and county of San Francisco," must be regarded as an act amendatory of the Consolidation Act, and consequently not repealed by any provision of the Political Code. In *Ex parte Simpson*, 47 Cal. 127, it was held that title 3 of part IV. of the Political Code, in which the foregoing section is found, was intended as a system or plan under which cities might be organized and governed, and that it is not applicable to any existing city and county. (See also *County of Merced* v. *Regents, etc.*, 66 Cal. 25.)

*Third.* It is contended that the act of 1863 is repealed by section 14, article I. of the constitution. This point, however, is grounded on the unwarrantable assumptions that the

act of 1863 provides for condemnation of land, and that this action is to condemn by authority of that act; whereas, nothing in this action depends upon the act of 1863, except the authority of the board of supervisors to order the widening of Mission Street.

In this action the defendants were not deprived of any right or privilege guaranteed by section 14, article I. of the constitution.

*Fourth.* It is claimed that the act of 1863 is repugnant to the original section 19 of article XI. of the constitution of 1879, which prohibited public work or improvement upon the streets of a city, the expense of which was to be specially assessed upon private property, unless an estimate of such expense be made and levied, collected and paid into the city treasury "before such work or improvement shall be commenced or any contract for letting or doing the same authorized or performed."

It is not perceived that the act of 1863 authorized any act prohibited by this section of the constitution; nor does it appear that any such prohibited act was done in the matter of widening Mission Street. The order to widen, the estimates, the assessment, and the collection, authorized by the act of 1863, and actually made or attempted in the case of Mission Street, seem to have been in strict accord with section 19 of article XI. of the constitution, as originally adopted. As that section was amended in 1884, the original section has no application to this case, unless the original adoption of it repealed the act of April 25, 1863, by implication.

*Fifth.* Counsel for appellant contends that the act of 1863 was repealed by the act of March 6, 1883 (Stats. 1883, p. 32), because inconsistent with the first section of the latter act, which is as follows: "No public work or improvement of any description whatsoever shall be done or made within any municipality organized and existing for municipal purposes, or hereafter organized in, upon or about the streets thereof, the cost or expense of which is made chargeable, or may be assessed upon private property by special assessment, except as in this act provided."

The act of 1883 is entitled, "An act to provide for the improvement of streets, lanes, alleys, courts, places, and sidewalks, and the construction of sewers within municipalities." The

second section authorizes the city council "to order the whole or any portion of the streets, sidewalks, lanes, alleys, courts, or places of any such city graded or regraded to the official grade, planked or replanked, paved or repaved, macadamized or remacadamized, graveled or regraveled, piled or repiled, capped or recapped, and to order sidewalks, sewers, manholes, culverts, curbing, and crosswalks to be constructed therein, and to order any other work to be done which shall be necessary to make and complete the whole or any portion of said streets, sidewalks, lanes, alleys, courts, or places"; but does not authorize the city council to open, extend, widen, or close any street; nor does it authorize the acquisition of land for these purposes by any method; and consequently does not authorize assessments to pay for such lands, or for any other purpose than to pay for the work and improvements authorized by the second section. It therefore follows that the act of 1883 is not inconsistent with the act of 1863 in so far as the latter act authorized the board of supervisors to *widen* streets and to provide the means of payment for such lands as it might be necessary to acquire for that purpose.

The act of 1883, neither expressly nor by implication, prohibits the widening of streets, nor any act necessarily implied or involved therein; and the acquisition and payment for the requisite land are necessarily involved in the widening of a street. No work or improvement, in the sense of the act of 1883, could be done or made on the addition to the street made by the widening, until after the widening. All the work and improvements authorized by the act of 1883 are to be done upon *existing* streets. Work and improvements upon existing streets constitute the whole subject-matter of the act; and, therefore, the prohibition in the first section cannot extend to the subject of creating or partially creating streets. (Lewis on Eminent Domain, sec. 256; *Knowles* v. *Muscatine,* 20 Iowa, 248.)

In this connection it should be observed, that, heretofore, it seems to have been the policy of the legislature to provide for improvements upon existing streets by acts entirely distinct from acts providing for opening, extending, and widening streets. Examples of the former are the acts of 1856 (p. 156), of April 1872 (p. 804), of March 6, 1883 (p. 35), and of March,

18, 1885 (p. 147), amended in 1889 and 1891. Examples of the latter are the acts of April 25, 1863 (p. 560), of 1889 (p. 70), and numerous other more special acts.

*Sixth*, and finally. It is claimed that the act of 1863 was repealed by the act of March 6, 1889 (p. 70).

This is answered by section 24 of the act of 1889, as follows: "The proceedings in any work or improvement, such as is provided for in this act, already commenced and now progressing under any other act now in force, or by virtue of any ordinance passed by any city council or board of supervisors of any city, county, or city and county, by virtue of any other act now in force, may, from any stage of such proceedings already commenced and now progressing, be continued under this act by resolution of the city council. The said work or improvement may then be conducted under the provisions of this act with full force and effect in all respects, from the stage of such proceedings under such other acts or ordinances at and from which such resolution shall declare an election or intention to have said work or improvement cease under such other act or ordinance and continue under this act; and from such election so made, all proceedings theretofore had under such other act or ordinance are hereby ratified, confirmed, and made valid, and it shall be unnecessary to renew or conduct over again proceedings had under such other act or ordinance. This section shall not apply to any work or improvement proceedings in which were commenced more than eighteen months prior to the passage of this act."

On May 10, 1889, the board of supervisors, in accordance with section 24 of the act of 1889, passed a resolution electing to continue the proceeding to widen Mission Street under the act of 1889, from and after the filing of the report of the commissioners who had theretofore been appointed and acting under the act of April 25, 1863. The report of the commissioners was filed June 15, 1889, from and after which date the proceedings were conducted under the act of 1889.

It is claimed by appellant that section 24 of the act of 1889 has no proper application to this case, because it is said, the proceeding to widen Mission Street was commenced more than eighteen months before the passage of the act of 1889. This

point raises the single question as to when the proceeding under the act of 1863 was commenced.

The act of 1863 provides that, before the board proceed to execute any power thereby vested in them, "thirty days' notice shall be given of any application which may be made for the passage of any order."

It appears that only two applications were made for the widening of Mission Street—the first, on June 20, 1887, by twenty property owners; and the second, by nine additional property owners, made October 31, 1887, and within eighteen months before the passage of the act of 1889. It would appear by the second application, that for some reason not disclosed by the record, the board had not acted on the first, and the record shows no action by the board until after the filing of the second, to wit, November 14, 1887, when the board ordered the publication of the thirty days' notice required by the act of 1863. This order of publication of notice was the first action of the board in regard to widening of Mission Street; and I think it was the commencement of the proceeding in the sense of section 24 of the act of 1889. The act of 1863 does not require the board to act upon the first, or upon any particular application, but does require thirty days' notice of the application on which the board proposes to act, *before it proceeds to execute any power conferred by that act.*

Again, counsel for appellants contend that in order to continue the proceeding under the act of 1889, the board must have elected and resolved to do so immediately after the passage of this act, and was not at liberty to continue the proceeding from that stage thereof at which the commissioners under the act of 1863 filed their report on June 15, 1889.

I think a careful reading of section 24 will be convincing that the proceeding was properly connected with, and continued under, the act of 1889. The language of the section is, "from the stage of such proceedings . . . . at and from which such resolution (of the board) shall declare an election or intention to have said work or improvement cease under such other act or ordinance, and continue under this act." This clearly implies the discretion of the board to elect a stage of the proceeding after the passage of the act of 1889. The resolution of the

board declared that the proceeding under the act of 1863 should cease at the stage thereof at which the report of the commissioners should be filed, and thence be continued under the act of 1889.

It is further claimed that the part of section 24 of the act of 1889 which purports to validate former proceedings is unconstitutional, because this subject or purpose is not expressed in the title of the act.

I do not think it necessary for the purpose of sustaining the judgment in this case that any former proceeding therein should have been ratified or validated by the act of 1889, for the reason that, so far as relates to the action to condemn the lands of the appellants, all the essential proceedings affecting appellants appear to have been valid and regular, as will more fully appear hereafter. Nevertheless, I think the subject of validating irregular proceedings to acquire land for the purpose of widening streets in municipalities is sufficiently expressed in the title of the act. The act is entitled "An act to provide for laying out, opening, extending, widening . . . . any street. . . . . in municipalities, and to condemn and acquire any and all land and property necessary or convenient for that pur-- pose." Surely, the ratification of proceedings to widen streets and to condemn land for that purpose is embraced in the subjects expressed in the title of the act, and directly operates as means to promote the objects of the act expressed in the title. (*Davies* v. *City of Los Angeles*, 86 Cal. 43.)

2. If the foregoing views are correct, it is unnecessary to inquire whether the board of supervisors was authorized by any other act of the legislature than that of April 25, 1863, to widen streets, and to provide means for the payment of all expenses of the improvement. After the respondent had by proper proceedings thereunder determined to widen Mission Street, it was competent for it under the principles laid down in the *City of Santa Cruz* v. *Enright*, 95 Cal. 105, to acquire by condemnation the lands of the appellants in the manner prescribed in the Code of Civil Procedure. Section 1238 of that code provides that the right of eminent domain may be exercised on behalf of the following public uses. . . . . "3. Roads, streets, and alleys, . . . . but the mode of apportioning and collecting the costs

of such improvements shall be such as may be provided in the statutes, by which the same may be authorized."

3. Numerous objections were made by counsel for appellants on the ground of defects and irregularities in the proceedings taken to assess property for the costs and expenses of the improvement, which were overruled by the court below, and the rulings upon such objections are here assigned as errors.

The most that could have been properly claimed was that evidence of those proceedings to assess property was totally irrelevant to any issue in this action to condemn appellants' lands which were not assessed. There is neither allegation nor evidence that *any* property of the appellants was assessed, and whether the property of others was lawfully assessed or not had no possible bearing or effect upon any material issue in this action.

The verdict of the jury, according to a form stipulated by the parties, found: 1. Generally for the plaintiff. 2. Specially, the value of the property of each defendant sought to be condemned; and 3. The damage which will accrue to the portion not sought to be condemned, by reason of its severance from the portion condemned, and by the construction of the improvement.

There is no exception to the verdict on the ground that it is not justified by the evidence.

The court first rendered an interlocutory judgment, requiring the plaintiff, within thirty days, to pay to each defendant, or to the clerk of the court for his use, the sums of money awarded to him by the jury for the value of his land condemned and for damages to his land not condemned.

After plaintiff's compliance with the interlocutory order by paying into court the money awarded to each defendant, the court rendered final judgment of condemnation. Whether the money thus tendered and paid into court for their use had been obtained by plaintiff through regular or irregular assessments on the property of others did not concern the appellants, nor affect the right of the plaintiff to condemn their lands which had not been assessed. The proceedings to assess and to enforce the payment of assessments are entirely distinct from actions to condemn land. There is no pretense that the money tendered

was not the property of the plaintiff, nor that it did not amount to just compensation. Therefore, the rights of the appellants in this action could not have been prejudiced by defects in proceedings to assess the property of others.

4. Section 18 of the act of 1889 provides that "the complaint (in an action to condemn) may aver that it is necessary for the city to take or damage and condemn the said lands, or an easement therein, as the case may be, without setting forth the proceedings herein provided for, and the resolution and ordinance ordering said work to be done shall be conclusive evidence of such necessity." It is contended that this provision is unconstitutional, both as to the form of the complaint and as to the conclusiveness of the evidence. As to the form of the complaint in an action merely to condemn, I think the provision unobjectional. Whether such a complaint in an action to enforce an assessment would be subject to the objection here made, is a question not involved in this action; nor does the record on this appeal raise any question as to whether the resolution or ordinance of the board is *conclusive* evidence of the necessity for taking or damaging appellants' lands, since it does not appear that any evidence upon this issue was offered by appellants, or rejected by the court; and, since it is not claimed nor specified that the evidence was insufficient to justify the verdict in any particular, it cannot be presumed that the bill of exceptions contains the evidence applicable to this issue.

5. It is contended that the court erred in excluding proffered evidence of damage *to the business* of three of the appellants — Reilly, Matthai and Collins — which had already accrued and which would still further accrue "by reason of said proposed widening," it appearing that Reilly kept a saloon, Matthai a blacksmith shop, and Collins a bakery, "on the line of the proposed improvement."

The offer to prove such damage was as general as above stated. It did not specify the nature of the alleged damages; nor does it appear that such business was done on the land taken, or on the land damaged for which compensation was awarded by the jury.

The general rule is, that in actions to condemn land for public use, no damages can be allowed for injury to business

caused merely by the improvement, and not by the taking of property. (Lewis on Eminent Domain, sec. 487.) If there is any exception to this general rule it must depend upon the specific nature of the injury, which should have been stated in order to enable the court to determine whether it was within the exception. All that was stated was that the damage was such as had accrued and would accrue to particular kinds of business caried on somewhere on the line of the improvement, not by reason of the taking of appellants' lands, but "by reason of the said proposed widening."

To say the least, the record does not show that the proffered testimony was competent, and therefore does not show that the court erred in excluding it.

I think the order and judgment should be affirmed.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

McFARLAND, J., HARRISON, J., FITZGERALD, J.

Hearing in Bank denied.