[Civ. No. 2925.    Second Appellate District, Division Two.—August 19, 1919.]

## THE FIDELITY & CASUALTY COMPANY OF NEW YORK (a Corporation), Respondent, v. LLEWELLYN IRON WORKS (a Corporation), Appellant.

[1] NEGLIGENCE — CONTRIBUTORY NEGLIGENCE AS DEFENSE — INSTRUCTIONS—CONFLICTING EVIDENCE—VERDICT—APPEAL.—Where, in an action to recover damages for the death of a person by the alleged negligence of the defendant, the latter pleads contributory negligence on the part of the deceased, and the court gives certain instructions based on such defense which will warrant the jury in awarding a verdict for the defendant should they find the facts upon which such instructions are predicated to be as claimed by the defendant, but there is a decided conflict on every fact upon which such instructions are predicated, and the jury settles the conflict in favor of the plaintiff, the judgment based thereon cannot be disturbed by the appellate court; and in view of such conflict, it cannot be said that the jury disregarded the instructions of the court.

[2] ID.—KNOWLEDGE OF PRESENCE OF PLANK ACROSS SHAFT—DEFENDANT PUT ON INQUIRY.—Under the circumstances of this case involving the death of a person engaged in painting a building, he at the time having been standing on the outer end of a plank which was extended across the open hatchway of one of several elevator shafts in which the defendant was installing elevators and having been caused to fall from such plank through its being struck by the counter-weight of an elevator operated by the defendant without warning to him, the very fact of the known presence of the plank across the shaft was notice to defendant for further investigation of that fact, although the presence of the plaintiff on the outer end thereof was not known.

[3] ID.—AGREEMENT BETWEEN EMPLOYERS—WANT OF NOTICE TO EMPLOYEE.—In such case, an agreement between the different employers engaged in the construction of the building that workmen should not use the elevator shaft without notifying the foreman of defendant was not binding upon the deceased where notice of such arrangement was not given to him.

[4] ID.—CONTRIBUTORY NEGLIGENCE OF DECEASED — QUESTION FOR JURY.—The question as to whether or not the deceased was guilty of contributory negligence in this case in being on the outer end of the plank where he could not be seen by defendant's employees, and as to whether or not his being there was such as to endanger his safety, was one for the jury.

[5] ID.—CONSTRUCTION OF BUILDING — EMPLOYMENT OF DIFFERENT CLASSES OF ARTISANS AT SAME TIME — RELATION OF EACH TO OTHERS.—Where several different classes of artisans are engaged in the construction of a building at one time, all of whom have necessary work to do, and which they are under contract to do, it cannot be said that the employees of the contractor who is engaged in the installation of the elevators are doing a more necessary work and a work of such importance that the other contractors and their employees can be treated as trespassers.

[6] ID.—OPERATION OF ELEVATOR WITHOUT WARNING—DUTY OF EMPLOYEE TO ANTICIPATE—ASSUMPTION OF RISK.—Where, notwithstanding the fact that at the time, to defendant's knowledge, other men than deceased were actually working in the hatchway across which was extended the plank on which the deceased was standing, no warning of the operation of the elevator was given, this in itself constituted negligence which deceased could not anticipate and which he did not assume.

[7] ID.—SUBROGATION UNDER WORKMEN'S COMPENSATION ACT.—The mere fact that the Workmen's Compensation and Safety Act does not specifically mention the matter of the subrogation of the employer, or his insurance carrier, to the rights of the injured employee, or, in the case of his death, to the rights of the heirs or personal representatives, is immaterial. This is a mere incident to the liability, or to the payment of the compensation, and is included in the general language of the title of the act, and especially that portion of the title providing for the creation of the liability; while the act itself provides that the payment of compensation shall be contingent upon the subrogation of the employer, or his insurance carrier, to the rights of the injured employee.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Bowen & Bailie, Jones & Weller and J. Crider, Jr., for Appellant.

R. P. Jennings, J. E. Shelton and Parker & Collier for Respondent.

THOMAS, J.—This is an action brought to recover damages for the death of one James F. Goldsmith by the alleged negligence of defendant. The case was tried by the court and a jury, who brought in a verdict against the defendant

for the sum of ten thousand dollars. The appeal is from the judgment so entered.

The facts, so far as material for our present purpose, are as follows: On July 24, 1914, James F. Goldsmith, the deceased, a painter, was accidentally killed by falling from a plank on which he was working, outside a window on the seventh floor of the Broadway Department Store building, in the City of Los Angeles, then under construction by Mr. Arthur Letts, as owner. Mr. C. B. Weaver was the general contractor in charge of the work, including the painting, and as such was the employer of said Goldsmith. The defendant had a contract for the installation of the elevators in the building, and was engaged in such work at the time of the accident. The elevator hatchways with which this case is concerned were five in number, located along the southerly wall of the building. These hatchways were all within one inclosure, formed by the wall of the building with a window opposite each hatchway on each floor, on the back, and a glassed-in frame work on the front, with sliding doors. The glass was in process of installation at the time of the accident. In order to perform any work on the south wall of the building it was necessary for the workmen to reach this wall. This they did by erecting a staging within and extending across the hatchways. Up this wall in each hatchway is a pair of upright guide-rails, between which are suspended heavy counter-weights, which slide up or down contrary to the action of the elevator-cage. One crew of men after another had so erected their staging and performed their work. Among these various workmen were plasterers, who plastered the walls of the shaft; carpenters, who put in the window-casings; sheet-metal men, who put in the metal window-sills; glass-workers, who put the glass in the front work; painters, who painted the window-frames, and window painters, who stained the window-sashes, each of whom, including Goldsmith, was engaged in doing a necessary and essential part of the building. Working simultaneously with these various crews were employees of defendant, engaged in the construction and installation of the elevators. At the time of the accident the only elevator which had been installed by defendant was elevator No. 5, the same being on the extreme right hand of a person looking into the hatchways from the floor

space. Prior to the day of the accident, this elevator had been operated and used by defendant's employees for testing the same and for carrying up and down laborers and supplies in connection with defendant's work on this and the other four hatchways, and had been run, on the day of the accident, some four or five hours prior thereto. On the second day after being so employed by said Weaver, deceased went to the seventh story of said building, placed one end of a plank on a saw-horse on the floor space opposite hatchway No. 5, the plank extending over the hatchway between the two upright guide-rails already referred to, through the open lower sash of the window on the wall side of the hatchway, and resting on the lower sill of said sash, so that about two feet of the plank projected out of the window and over the alley, seven stories below. On this board, and that particular portion thereof so extending over the alley, as aforesaid, the deceased stood and proceeded to paint. While so employed, and without any previous warning, said elevator descended, and at the same time the said counter-weights ascended, striking the plank from the underside, causing deceased to fall therefrom to the alley below, resulting in his death.

The deceased left a widow and a minor child, who made claim for compensation for his death under the Workmen's Compensation Act of this state, [Stats. 1917, p. 831], against Arthur Letts and C. B. Weaver, as his employers, and against the Fidelity & Casualty Company of New York, plaintiff herein, their insurer. The Industrial Accident Commission, accordingly, on March 26, 1915, awarded compensation, and the said Fidelity & Casualty Company of New York, pursuant to the terms of its policy, assumed liability for the entire award, making the payments thereunder. Thereafter, joining Letts and Weaver as plaintiffs, this action was brought by the Fidelity & Casualty Company of New York for general damages, as hereinbefore set forth.

There was a demurrer to the complaint, which was overruled. In its answer defendant denied negligence, alleged one recovery—the award as made by the Industrial Accident Commission—precluding any other; that deceased was a trespasser, and, at most, a mere licensee; charged contributory negligence; and further alleged that the accident

42 Cal. App.—49

was caused by the negligence of the deceased. On the trial, Letts and Weaver were dismissed as plaintiffs. There was a motion for nonsuit, which was denied. There was a motion for a new trial, which was never passed upon by the trial judge, and hence, under section 660 of the Code of Civil Procedure, is deemed denied. The appeal here is from the judgment so entered.

Appellant urges as a basis for a reversal of the judgment: (1) Excessive damages given under the influence of passion or prejudice; (2) insufficiency of the evidence to justify the verdict; (3) That the verdict is against law; and (4) errors of law occurring at the trial. It also specifies 138 assignments of error.

Referring to the point made as to excessive damages given under the influence of passion or prejudice, suffice it to say that no evidence upon which such statement is based has been called to our attention, and we have failed to find anything in the record from which such an inference could be drawn, or that would justify such a conclusion.

The trial court, after instructing the jury that contributory negligence, if found, would bar recovery, gave certain instructions designated as "P," "Q," and "R." Appellant contends that the verdict of the jury was in "complete disregard of the foregoing instructions, and against the law declared thereby," and urges that "these instructions in effect required a verdict for defendant." [1] Appellant insists, with commendable vigor, that "an examination of the evidence will show that every fact on which these instructions were predicated was shown without conflict, and if so a finding of contributory negligence and a consequent verdict for defendant were inevitable." There is no doubt but that the instructions referred to were proper were the facts as shown by the evidence in this case such as contended for by appellant; but after an examination thereof we are unable to agree with its statement of such facts. Beyond the pale of successful contradiction, we think, the record shows a very decided conflict on every fact upon which the said instructions were predicated. Upon these conditions there was no disregard by the jury of the court's instructions. There was evidence upon which the said instructions were predicated, and which, if believed by the jury, would have sustained a verdict for defendant; but the

jury having settled that conflict in favor of the plaintiff, this court cannot now disturb the judgment based thereon. Under these circumstances it is obvious that discussion of the question as to whether instructions given by the court, right or wrong, became the law of the case is unnecessary.

The next point urged by appellant is that of contributory negligence on the part of deceased. We are not able to agree with it in that contention. [2] For instance, defendant contends that even if its employees had seen the said plank, they would have no intimation that they might injure anyone by moving the car. But we are compelled to conclude that the very fact of the known presence of the plank across the shaft was notice to defendant for further investigation of that fact, and such an investigation would have disclosed the presence of deceased on the outer end thereof, as before stated. [3] It is also contended by defendant that there was an agreement between the employers that workmen should not use the shaft without notifying the foreman of defendant. But assuming such to have been the case, notice of that arrangement must be shown to have been given to deceased. There is not one word of evidence that this was done. The rule is, as we understand it, that an agreement as to the manner of doing work by an employer is not binding upon the employee unless the existence of such is brought home to him. (*Alabama Midland R. Co.* v. *McDonald,* 112 Ala. 216, [20 South. 472]; *Brown* v. *Louisville etc. R. Co.,* 111 Ala. 275, [19 South. 1001]; *Atchison, T. & S. F. Ry. Co.* v. *Plunkett,* 25 Kan. 188.) We are not informed of the existence of any rule of law which made it necessary for decedent to anticipate and guard against negligent acts of defendant. (*Morgan* v. *Robinson Co.,* 157 Cal. 348, [107 Pac. 695], and cases there cited; *Herold* v. *Mathews,* 39 Cal. App. 489, [179 Pac. 414].) Although by looking up the shaft and seeing the plank defendant's employees could not see the man, still, in contemplation of law, the man being where he was, was within the shaft, and, as already seen, care and further investigation would have disclosed his position at the place stated. [4] At any rate, we are satisfied that the question as to whether or not deceased was guilty of contributory negligence in being on the outer end of the plank, and as to whether or not his being there was such as to endanger

his safety, was one for the jury. (*McKune* v. *Santa Clara
etc. Co.*, 110 Cal. 480, [42 Pac. 980] ; *Seller* v. *Market Street
Ry. Co.*, 139 Cal. 268, [72 Pac. 1006] ; *Herbert* v. *Southern
Pac. Co.*, 121 Cal. 227, [53 Pac. 651] ; *Fox* v. *Oakland etc.
Ry. Co.*, 118 Cal. 55, [62 Am. St. Rep. 216, 50 Pac. 25] ;
*Loftus* v. *Pacific Electric Ry. Co.*, 166 Cal. 464, [137 Pac.
34].)

[5]  Appellant's next contention is that decedent was not
its employee, but was the employee of an independent con-
tractor, and that being such, he was a trespasser in the
shaft at the time of the accident, or at the most a mere
licensee, to whom defendant owed no duty, except that of
not wantonly injuring him. Confronted with the record
before us, we think this contention without merit.  When
we take into consideration the fact that in the construction
of a modern business block—and the Broadway Department
Store building of Los Angeles is such a block—that there
are required, including many others, such artisans as plas-
terers, carpenters, glass-men, sheet-metal men, and interior-
finish men, all of whom, according to the evidence here, had
necessary work to do on the south wall of this building,
and were under contract to do such work, we are at a loss
to understand by what line of reasoning a conclusion can be
arrived at that the employees of defendant (also just as
essential in their part of the construction of a such a block)
were doing a more necessary work, and a work of such im-
portance that the other contractors and their employees
could be treated as trespassers.  How anyone reading this
record, not to say anything of those who saw the witnesses
and heard their testimony, would arrive at any other con-
clusion than that both before and after the time of the
ill-fated accident several workmen were continually engaged
in work in the elevator shaft or hatchways, including the
one—No. 5—in which was the elevator that caused the acci-
dent, that no less than seven men were working in this very
hatchway on the day of the accident, and, further, that this
fact was known to defendant during all of said time, we are
unable to understand.

Defendant asks what more it could have done than it did
for Goldsmith's protection.  From the record before us
we are justified, we believe, in suggesting that the answer
to that inquiry is, that it does not appear that anything was

done, or any precaution taken by defendant, for the safety of deceased. Indeed, it appears that the things which ordinary prudence would have suggested were omitted. Not even was the presence of the board in the hatchway investigated; nor was the board removed. [6] Notwithstanding the fact that other men than deceased were actually working in this very hatchway at the time, to defendant's knowledge, no warning was given. This in itself constituted negligence which deceased could not anticipate, and which, under the law and the evidence as disclosed here, he did not assume. "The authorities seem clear that an employee voluntarily putting himself in a place of danger does not thereby necessarily assume the risk of injury from the want of care of his employer." (*Morgan* v. *Robinson Co., supra.*)

Appellant next urges, throughout some thirty-seven pages of its opening brief, the point that the plaintiff corporation has no legal capacity to sue in this case. It is also urged, among other things, that there is no proof that a *lawful claim* was made "in conformity with law"; that in the proceedings had before the Industrial Accident Commission under the Workmen's Compensation and Safety Act defendant was not called upon to contest the question as to whether or not the claim was a lawful one, and whether or not a legal liability existed on the employer's part; that if the award of the commission is made binding and conclusive by the terms of the act, then the provisions are unconstitutional, and, conversely, if the award is not binding, then no foundation was laid for plaintiff's right to sue, because there was no other evidence offered; that the provisions of said act in question violate specific injunctions of the constitution of this state, and infringe also specific provisions of the fourteenth amendment to the constitution of the United States; that the provisions of said act authorize a double satisfaction for the same tort; that the act contains more than one subject, and that the right of subrogation is not expressed in its title. We think, however, that the mere mention of these contentions will serve to make obvious their lack of merit. The constitutionality of the Workmen's Compensation and Safety Act has been upheld by the supreme court of this state in the case of *Western Indemnity Co.* v. *Pillsbury,* 170 Cal. 686, [151 Pac. 398], and practically all of the foregoing objections

decided contrary to the contention of appellant here.   **[7]**
The fact that the act does not specifically mention the matter
of the subrogation of the employer, or his insurance
carrier, to the rights of the injured employee, or, in the case
of death, to the rights of the heirs or personal representatives,
we think is immaterial.   All that the act itself does
is to provide that the payment of compensation shall be
contingent upon the subrogation of the employer, or his
insurance carrier, to the rights of the injured employee.
This is a mere incident to the liability, or to the payment
of compensation, and is included in the general language
of the title of the act, and especially of that portion of the
title providing for the creation of a liability.   "The right
to subrogation" is, we think, included within that portion
of the title of the act which reads:   " . . . and providing
the means and methods of enforcing such liability."   "Subrogation,"
under these conditions, is one of the essential
steps necessary to the enforcement of such liability, and
embraced within the title of the act.   Does not this question
of subrogation come within the purview of legitimate inquiry
made by any person of ordinary intelligence?   Would
not such a person naturally be led to ask such questions
as the following:   What employers are compensated?   Under
what circumstances?   Upon what conditions?   What rights,
if any, do the employers surrender or acquire by reason of
their having to compensate their employees?   What are the
methods by which the compensation is made to inure to
the benefit of the employee?   We think the answer to our
own query must be in the affirmative; for, certainly all of
the foregoing hypothetical questions are, undoubtedly, germane
to the purpose expressed in the title.   Citations might
be multiplied, but the following will, in our opinion, serve
to support our present conclusions:   *In re Schuler,* 167 Cal.
282, [Ann. Cas. 1915C, 706, 139 Pac. 685] ; *In re Maginnis,*
162 Cal. 200, [121 Pac. 723] ; *Matter of Yun
Quong,* 159 Cal. 508, [Ann. Cas. 1912C, 969, 114 Pac. 835] ;
*Anglo-Californian Bank* v. *Field,* 146 Cal. 644, [80 Pac.
1080] ; *Gieske* v. *County of San Joaquin,* 109 Cal. 489, [42
Pac. 446] ; *Kings County* v. *Johnson,* 104 Cal. 198, [37 Pac.
870] ; *People* v. *Superior Court,* 100 Cal. 105, [34 Pac. 492] ;
*San Francisco* v. *Kiernan,* 98 Cal. 614, [33 Pac. 720] ;
*Ex parte Liddell,* 93 Cal. 633, [29 Pac. 251] ; *Francais* v.

*Somps,* 92 Cal. 503, [28 Pac. 592] ; *Davies* v. *Los Angeles,* 86 Cal. 37, [24 Pac. 771] ; *Abeel* v. *Clark,* 84 Cal. 226, [24 Pac. 383] ; *Massachusetts etc. Co.* v. *San Francisco etc. Ry. Co.,* 39 Cal. App. 388, [178 Pac. 974].

Appellant urges next that the court erred in giving certain instructions requested by plaintiffs, and in refusing to give certain other instructions requested by defendant. With this contention we are not able to agree. Having read every instruction given, as well as every requested instruction denied, we are of the opinion: (1) That the instructions given, objection to which is urged by appellant here, were ample, and as favorable to defendant—as disclosed by the record—as they properly could be on the questions presented. This is especially and obviously so, we think, when the instructions objected to are considered with, and in the light of, the other instructions given.   (2) As to those denied, some were based upon a view of the case absolutely unsupported by the evidence, and therefore erroneous as a matter of law, while others had already been covered by instructions given at defendant's request, and also by the general instructions given by the court.

The remaining points urged, we think, need not be considered.

In our opinion the evidence is sufficient to support the verdict, and the verdict and judgment based thereon are, and each is, according to law.

Judgment affirmed.

Finlayson, P. J., and Sloane, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 16, 1919.

All the Justices concurred.