E. L. FARMER & COMPANY, a corporation, Appellant,

v.

Marshall W. HOOKS and American Motorists Insurance Company, Appellees.

No. 5386.

United States Court of Appeals Tenth Circuit.

Nov. 26, 1956.

Rehearing Denied Dec. 31, 1956.

Writ of Certiorari Denied March 25, 1957. See 77 S.Ct. 669.

Clyde J. Watts, Oklahoma City, Okl., and Howard Barker, Fort Worth, Tex. (Looney, Watts, Looney, Welch, Hamill & Nichols, Oklahoma City, Okl., and Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., were with them on the brief), for appellant.

James E. Grigsby, Oklahoma City, Okl. (Howard C. Triggs, Oklahoma City, Okl., was with him on the brief), for appellee Marshall W. Hooks.

Howard Davis and Robert S. Kerr, Jr., Oklahoma City, Okl. (Kerr, Conn & Davis, Oklahoma City, Okl., were with them on the brief), for appellee American Motorists Insurance Co.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

BRATTON, Chief Judge.

Marshall W. Hooks instituted this action against E. L. Farmer & Company, a corporation, to recover damages for physical injury, together with expenses incurred and to be incurred for medical and nursing care. The substance of the cause of action pleaded in the complaint was that Kerr-McGee Oil Industries, Inc., hereinafter referred to as Kerr-McGee, was engaged in rigging up a drilling rig preparatory to the drilling of a well for oil and gas on a location in Texas; that in connection therewith defendant unloaded from trucks at the location of the well certain drilling equipment and material, including a steel platform known as a "monkey board"; that the defendant negligently and carelessly leaned the platform against a small tree near the well site; that plaintiff was employed by Kerr-McGee and was engaged with other employees in rigging up the drilling rig; that plaintiff sat on the ground under the tree against which the platform was leaning in order to be in the shade while eating his lunch; and that the platform fell upon him and caused him serious and permanent injury. American Motorists Insurance Company, the insurance carrier of Kerr-McGee, intervened to recoup compensation payments made to plaintiff.

The evidence adduced upon the trial tended to establish these facts and circumstances. Kerr-McGee owned or controlled as lessee the premises at which the accident and resulting injury occurred and it was preparing to drill thereon a well for the production of oil and gas. Through use of a bulldozer, an area approximately 150 feet square had been cleared of mesquite. A paved road extending north and south was located east of the cleared area and motor vehicles entered the area from the road. By means of trucks, B. L. Beakley transported to the location the equipment and material to be used in rigging up the drilling rig. The trucks were stopped in the northeast portion of the cleared area. Pursuant to contractual arrangement with Kerr-McGee, appellant was employed to unload the equipment and material at that place in the cleared area and to move it into position as it became needed in the assembling of the rig. A tree 12 or 15 feet in height was located east or slightly north of east of the well site on the cleared area. The distance of the tree from the well site was variously estimated at 100 to 200 feet. Sometime around 8:30 to 9:30 o'clock on the day of the accident, employees of appellant, in the course of their employment and through use of a truck equipped with a gin pole and winch line, unloaded the steel platform to which reference has been made and leaned it against the tree. The platform was approximately 8 by 10 feet in size, and its weight was estimated at from 400 to 1600 pounds. The long side of the platform rested on the ground. It was positioned at an angle of about 45 degrees, and it rested against the tree approximately 2 feet off center. When the platform was placed in that position, an employee of appellant weighing from 180 to 190 pounds jumped upon it and unfastened it from the winch line. The ground at that point was smooth and of caliche formation. It was the intention of the employees of appellant to let the platform remain in that position until the next day when it would be moved into its position at the derrick. It was the established custom and practice among those engaging in assembling and rigging up drilling rigs to lay the steel platform on the ground until it was placed in its position at the derrick. The reason the employees of appellant left this particular platform in a leaning position rather than laying it on the ground was that it could be more easily or conveniently picked up when needed in the assembling of the derrick. Twenty-two men were working at the location, 15 being employees of Kerr-McGee and 7 employees of appellant. Appellee began working for Kerr-McGee that morning as a roughneck and he was participating in the work at the substructure of the

well site. About 12:30 o'clock, the employees of Kerr-McGee were told that it was time for lunch. An automobile belonging to appellee was standing slightly south of east from the tree, and a water can containing drinking water was located about 25 feet southwest of the tree. Appellee went to his automobile, got his lunchbox, and started for the water can but did not get any water for the reason that time was short and several men were ahead of him. He then went to the tree and sat down underneath it in order to be in the shade while eating his lunch. The platform fell and struck appellee in the back and he was seriously and permanently injured. The court submitted to the jury the questions of negligence, proximate cause, contributory negligence, assumption of risk, and unavoidable accident. The jury returned a verdict for plaintiff; judgment was entered upon the verdict; and defendant appealed.

■■■ The first ground of attack upon the judgment is that since appellant owed no duty to furnish appellee a place at which to eat his lunch, he was a mere licensee and appellant could not be liable for his injury. The substance of the argument in support of the contention is that in respect to the place on the premises at which the platform was leaned against the tree, appellee was a mere licensee; that appellant owed him only the duty to refrain from active negligence or wilful injury; that the evidence showed conclusively that appellant did not demonstrate wilful, wanton, or reckless conduct toward appellee in placing the platform against the tree; and that therefore the judgment should be reversed and the cause remanded with directions to dismiss the action. The accident and resulting injury having occurred in Texas, the law of that state governs herein respecting the rights, duties, and obligations of the parties, and the liability, if any, of appellant. And as we understand the law of Texas, it is the general rule that a licensor assumes no duty toward a licensee except to refrain from causing him injury by active negligence or wilful, wan-

ton, or reckless conduct. Gonzalez v. Broussard, Tex.Civ.App., 274 S.W.2d 737. But here both appellant and appellee were on the premises as invitees of Kerr-McGee. Appellee was not there pursuant to direction, consent, or other permissive grant of appellant. There was no relationship of licensor and licensee between them in respect to the occupancy of the premises. And there was nothing in the relationship between them which operated to narrow or limit to any extent the duty resting upon appellant to exercise reasonable care under the circumstances for the safety of appellee while they were on the premises of their common employer in connection with the discharge of their respective duties. St. Louis Expanded Metal Fireproofing Co. v. Dawson, 30 Tex.Civ.App. 261, 70 S.W. 450; Snelling v. Harper, Tex.Civ.App., 137 S.W.2d 222; Larson v. Tri-City Electric Service Co., 7 Cir., 132 F.2d 693; Constantino v. Watson Contracting Co., 219 N.Y. 443, 114 N.E. 802; Samuel E. Pentecost Const. Co. v. O'Donnell, 112 Ind.App. 47, 39 N.E.2d 812; Fidelity & Casualty Co. of New York v. Llewellyn Iron Works, 42 Cal.App. 766, 184 P. 402.

■■■ The judgment is challenged on the further ground that under the uncontroverted evidence appellee was guilty of contributory negligence. It is conceded that the charge given was a correct statement of the law of contributory negligence. But it is said that if appellant be held negligent in leaning the platform against the tree, appellee was negligent in sitting under the tree, or even near the platform; that any negligence on the part of appellant furnished only a remote condition for the accident; and that therefore the court should have directed a verdict for appellant. It is the well established rule of law in Texas that ordinarily the question of contributory negligence is by reason of the very nature of the defense one of fact for the jury, and that it becomes a matter of law for the court only when but one reasonable conclusion can be drawn from all the testimony. City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125; Texas &

Pacific Railway Co. v. Day, 145 Tex. 277, 197 S.W.2d 332; Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585. It is the further rule in that state that the mere fact that a person may expose himself to a danger does not necessarily preclude recovery; and that even where a person has actual or imputed knowledge of danger, a question of fact as to negligence is presented unless it can be said as a matter of law that a person of ordinary care would not have incurred the risk. Gulf, Colorado & Santa Fe Railway Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442. When all of the facts and circumstances in this case are viewed in the light of these guiding principles, we are unable to say that as a matter of law appellant was guilty of such contributory negligence as to bar recovery.

■ Complaint is made respecting the instruction given to the jury relating to assumption of risk. The substance of the instruction was that if appellee knew that a dangerous condition existed due to the manner in which the platform was resting against the tree, and with knowledge of such apparent danger voluntarily placed himself in a position of peril and as a consequence was injured, he could not recover; but that if he was not apprised of the dangerous condition or the presence of hazard, he could not be deemed to have assumed the risk by sitting under the tree. The trend of the argument is that the defensive rule of assumption of risk includes risks actually known to plaintiff and those which should be known through the exercise of ordinary care; that any danger inhering in the leaning position of the platform was apparent and was known or should have been known in the exercise of ordinary care; and that by voluntarily sitting under the tree, appellee inevitably assumed the risk as a matter of law. In Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, the contention was categorically presented that the dangers complained of were open and obvious; that plaintiff had opportunity equal with that of defendant to know of such dangers; and that therefore the rule of assumed risk precluded recovery on the part of plaintiff as a matter of law. And the contention thus categorically presented was squarely decided, the court holding in language too clear for doubt that the right of plaintiff to recover cannot be defeated on the theory that he assumed the risk of injury unless it appears that with full knowledge of the nature and extent of the danger involved, he put himself in the way of the particular risk involved as the result of a deliberate choice. And that general rule was expressly repeated in the later case of Page v. Scaramozi, Tex.Civ.App., 288 S.W.2d 909. The case of McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391, upon which appellant relies is distinguishable. Without citing or referring to Triangle Motors of Dallas v. Richmond, supra, the court there said in general language that the duty to exercise ordinary care to keep premises in a reasonably safe condition does not extend to invitees who know or should know of the existence of the particular condition and who appreciate or should appreciate its dangers. And the court further said that if, having knowledge of the dangers, an invitee exposes himself to them he must take the premises as he finds them and there is no duty upon the owner to protect him even by the use of reasonable precautions to eliminate the hazard. But in that case it was crystal clear from the testimony of plaintiff himself that he actually knew of the slick condition of the floor which caused the fall and resulting injury and fully appreciated the danger of working on it. The case did not turn in whole or in part upon the question whether the reach of the doctrine of assumed risk includes one who does not actually know of the danger but in the exercise of ordinary care should know of it. Another case upon which appellant places strong reliance is Phillips Petroleum Co. v. Gibson, 5 Cir., 232 F.2d 13. There plaintiff sued in the United States Court for the Western District of Texas. The trial court submitted to the jury the question of assumed risk. Plaintiff recovered. Citing McKee v. Patter-

son, supra, and resting its conclusion in part upon the assumption of an apparent risk which in the exercise of ordinary care plaintiff should have known, the Court of Appeals reversed the judgment of the District Court and rendered judgment for the defendant. And on certiorari, the judgment of the Court of Appeals was vacated and that of the District Court was reinstated. Gibson v. Phillips Petroleum Co., 352 U.S. 874, 77 S.Ct. 16, 1 L.Ed. 77. Paraphrasing somewhat the language of the court in Triangle Motors of Dallas v. Richmond, supra, we think it is fairly apparent that under the law of Texas the right of appellee to recover herein cannot be defeated on the theory that in the exercise of ordinary care he should have known of the danger inhering in the leaning position of the platform; and that he deliberately put himself in the way of the particular risk as the result of a deliberate choice.

 Error is predicated upon the admission of testimony given by an expert witness. The witness was a geologist and reservoir engineer. His studies of physical sciences included the laws of physics, mathematics, chemisty, geometry, and analytic geometry; and he had made a study of stresses, strains, leaning objects, and falling objects. His testimony related in the main to the rotation of the platform when it slipped down the tree. And he was permitted at one juncture to state that one might sit at what seemed a safe distance from the platform and still be hit as it fell. Expert testimony is appropriate when the subject of inquiry is one which jurors of normal experience and qualification would not be able to decide on a solid basis without the technical assistance of one having unusual knowledge of the subject by reason of skill, experience, or education in that particular field; the determination of the admissibility of expert testimony rests largely in the discretion of the trial court; and when exercised within normal limits, such discretion will not be disturbed on appeal. Brigham Young University v. Lillywhite, 10 Cir., 118 F.2d 836, 137 A.L.R. 598, certiorari denied 314

U.S. 638, 62 S.Ct. 73, 86 L.Ed. 512; Schillie v. Atchison, Topeka & Santa Fe Railway Co., 8 Cir., 222 F.2d 810. It is enough to say without laboring the question that we think there was no abuse of discretion in admitting the testimony in question.

 One ground of the motion for new trial was that the verdict of the jury was a quotient verdict. Two affidavits were attached to the motion for new trial. One was made by a claims representative working with the attorneys for appellant in the trial and the other was made by one of the attorneys for appellant. From such affidavits, considered together, it appeared that within a few minutes after the return of the verdict the claims representative went into the jury room and picked up certain work sheets and scraps of paper, some of which were in wastebaskets; that the claims representative delivered all of such work sheets and scraps of paper to the attorney; that the attorney delivered them to the clerk of the court; and that adding together twelve sets of figures appearing on such sheets or scraps of paper and dividing the total by twelve results in a quotient of $114,295, the amount of the verdict. Based upon considerations of sound public policy, it is the well established rule that ordinarily jurors in the United States Court will not be heard to give testimony, either oral or by affidavit, for the purpose of impeaching the verdict returned where the facts sought to be shown are such that they essentially inhere in the verdict. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114; McDonald v. Pless, 238 U.S. 264; Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993; Stein v. People of State of New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L.Ed. 1522; Johnson v. Hunter, 10 Cir., 144 F.2d 565; Loney v. United States, 10 Cir., 151 F.2d 1; Young v. United States, 10 Cir., 163 F.2d 187, certiorari denied, 332 U.S. 770, 68 S.Ct. 83, 92 L.Ed. 355; 334 U.S. 859, 68 S.Ct. 1533, 92 L.Ed. 1779; Western Spring Service Co. v. Andrew, 10 Cir., 229 F.2d 413; Northern Pacific Railway

**554**

Co. v. Mely, 9 Cir., 219 F.2d 199; Armstrong v. United States, 8 Cir., 228 F.2d 764, certiorari denied, 351 U.S. 918, 76 S.Ct. 710.

Appellant does not rely upon the testimony or affidavits of members of the jury to impeach the verdict on the ground that it was reached through the quotient method. Appellant relies upon so-called work sheets and scraps of paper with figures made thereon by members of the jury in the course of their deliberations. There is no present need to explore the question whether evidence of that kind falls into the inadmissible class along with testimony or affidavits of jurors. Assuming, without so deciding, that the evidence was admissible, standing alone it was not sufficient to impeach the verdict. It is essential that some feasible means be employed as a method of reaching a figure upon which all members of the jury agree as just and reasonable compensation. One of the methods sometimes used by jurors for bringing themselves together in respect to amount is the process of addition and division. And to add the several sums which the several jurors respectively think should be awarded plaintiff and divide the total by twelve does not render a verdict reached in that manner open to impeachment on the ground of being a quotient verdict provided that after the mathematical computation has been made and the quotient is known each juror for himself agrees severally and collectively that the sum reached in that manner shall be carried forward into the verdict. The vice which renders a verdict subject to impeachment on the ground of being a quotient verdict is an agreement in advance to accept the amount as the verdict, without subsequent consideration. Page v. Lockley, Tex.Civ.App., 176 S.W.2d 991, reversed on other grounds, 142 Tex. 594, 180 S.W.2d 616; Hamilton v. Atchison, Topeka & Santa Fe Railway Co., 95 Kan. 353, 148 P. 648, L.R.A.1915E, 455; Talley v. Greear, 34 N.M. 26, 275 P. 378;

Will v. Southern Pacific Co., 18 Cal.2d 468, 116 P.2d 44; Ehalt v. McCarthy, 104 Utah 110, 138 P.2d 639; Board of Commissioners of Dona Ana County v. Gardner, 57 N.M. 478, 260 P.2d 682. There was no showing in this case that the jurors entered into an agreement in advance that the quotient reached—whatever the amount—should be the verdict without subsequent consideration. So far as the record discloses, the jurors may have agreed each for himself after the addition and division had been completed that the quotient thus reached should be his verdict. Therefore, the showing made was not enough to warrant impeachment of the verdict on the ground that it was a quotient verdict.

Another ground of the motion for new trial was excessiveness of the verdict. It is argued that the verdict is excessive and obviously the result of passion and prejudice. The question whether a verdict is excessive and is the result of passion and prejudice is one for the trial court to determine on motion for new trial. The action of the court in granting or denying a motion for new trial on that ground is not open to review on appeal except for abuse of discretion. And ordinarily it will not be held on appeal that the trial court abused its discretion in denying a motion for a new trial on such ground unless it affirmatively appears that in respect to amount the verdict resulted from bias, prejudice, or passion. Chicago, Rock Island & Pacific Railway Co. v. Kifer, 10 Cir., 216 F.2d 753, certiorari denied, 348 U.S. 917, 75 S.Ct. 299, 99 L.Ed. 719. This case was carefully and painstakingly tried on a high level and the record is completely barren of any persuasive indication of appeal to passion or prejudice. We fail to find in the record any basis for the conclusion that the court abused its discretion in denying the motion for new trial on the ground of excessiveness of the verdict.

The judgment is affirmed.